## SAMUEL E. HATCHER

### *v.*

## THE TOLEDO, WABASH & WESTERN RAILROAD COMPANY.

1. STATUTE—*construction—retrospective.* The intention must be clearly expressed that a statute should retroact upon prior contracts and rights, before this court will so construe it. If the intention be doubtful, the construction will be that it operates prospectively only.

2. SAME—*consolidating railroads.* The act of 1867, which provides that, in case of consolidation of two or more railroad companies, the consolidated company shall be liable for all debts of each company entering into the arrangement, is not retrospective, but was designed to apply to companies which might consolidate after its passage.

3. CONSOLIDATION OF RAILROADS—*liability for debts by subsequent legislation.* A railroad company being authorized by its charter to borrow money and secure its payment by mortgage or deed of trust of its road, property, and income, but not of its franchise, executed a deed of trust on its road, property, rights, and franchise, under which the trustees sold and conveyed the same to certain parties, who organized a new company under the old name. Subsequently, a special act of the legislature was passed authorizing the president of the old company to transfer the corporate franchise to the purchasers, which he did, and the old corporation ceased to exist: *Held,* that

the purchasers at the trustee's sale having acquired a valid title to the property of the corporation without liability for any of its debts which were not a prior lien, their rights could not be taken away or impaired by subsequent legislation; and having consolidated with another company prior to the act of 1867, the consolidated company was not liable for the debts of the first-named corporation.

4. CURATIVE LEGISLATION. Where a railroad company has made a mortgage or sale of its corporate franchise, without authority in its charter, the same may be ratified and rendered valid by subsequent legislative enactment. The right to object to such transfer is one affecting the public alone, which the legislature, as the representatives of the people, may waive by a subsequent act.

5. SAME. Thus a railroad company, not authorized to incumber or transfer its corporate franchise, executed a deed of trust on its road, property, rights, and franchise, under which the trustee sold and conveyed the same. The president of the company, under a subsequent act for that purpose, transferred the corporate franchise to the purchasers: *Held,* that even if the franchise could not be transferred without the consent of the legislature, it might be subsequently given; and that the State having assented to the sale of the franchise, no other party could interfere.

6. SALE OF FRANCHISE FOR DEBT. It seems that without legislative authority, the franchise of a railroad company can not be subjected to sale on judgment and execution for its debts.

APPEAL from the Circuit Court of Adams County; the Hon. JOSEPH SIBLEY, Judge, presiding.

This was an action of debt, brought by appellant against appellee, to recover on coupons of bonds issued by the Quincy & Toledo Railroad Company. The facts bearing upon the questions decided appear in the opinion of the court.

Mr. JACKSON GRIMSHAW, for the appellant.

Messrs. SKINNER & MARSH, for the appellee.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

The indebtedness sued upon was created by the Quincy & Toledo Railroad Company; and recovery is sought upon the

ground of the consolidation of the two companies, by virtue of the statute, which provides, that in case of consolidation of two or more companies, the consolidated company shall be liable for all debts of each company which may enter into the arrangement.    Sess. Laws 1867, 80.

The company which created the indebtedness prior to the alleged consolidation, executed a deed of trust, with power of sale, upon the road, and all the property, rights, and franchises of the company, to John Ross, as trustee, to secure a large indebtedness.

The trustee sold, under the trust deed, to Morgan, Ketchum, and Jesup, and executed to them a deed in 1861.    The consolidation was not effected until in 1865.    Intermediate the date of the deed and the consolidation, the purchasers at the trustee's sale, organized a corporation by the name of the "Quincy & Toledo Railroad Company;" fixed the amount of capital stock; provided for an annual meeting of stockholders; designated certain persons as directors until the annual election, with power to manage the affairs of the company; issued certificates of stock, and provided a corporate seal.

The original charter of the company authorized it to borrow money; execute bonds therefor; and secure their payment by a mortgage or deed of trust upon the road, property, and income of the company; but did not authorize it to mortgage its franchise.

Subsequent, however, to the execution of the trust deed, and prior to the sale thereunder, the legislature authorized the president of the company, by writing, under the corporate seal, to transfer the corporate franchise to the purchasers under the deed of trust.    Pri. Laws 1861, 520.

A deed was executed in pursuance of this law, and accepted by the purchasers, and the organization by them before referred to, effected.

The law of 1861 authorized the purchasers, after the acceptance of the deed, to assume and use the corporate name of the Quincy & Toledo Railroad Company, with all its privileges and franchises.

The proof shows, further, that after the sale the general manager of the road, who never had any connection with the old company, operated it for the purchasers, and that the old company ceased to exist so far as the old officers had any thing to do with the management.

Under the facts, there are numerous objections to recovery in an action of debt, by virtue of the law of 1867, passed two years subsequent to the consolidation.

This law is not retrospective in terms, and can not be made so by any fair construction. Its language and object are entirely prospective; and the intention must be clearly expressed, that it should retroact upon prior contracts and rights before the court will so construe it. If the intention be doubtful, the construction will be, that it is to operate prospectively only. It is manifest that this act was designed to apply to companies which might effect a consolidation after its passage. *Garrett* v. *Wiggins*, 1 Scam. 335; *Thompson* v. *Alexander*, 11 Ill. 54; *Marsh* v. *Chesnut*, 14 Ill. 223.

In the last case the court declared it to be a serious question, whether the legislature had the constitutional power to enact retroactive laws.

The company had the unquestioned right to mortgage its road and property to secure money borrowed, without any regard to the franchise; upon default in payment, the trustee had the right to sell, and the purchasers at the sale acquired a good and valid title to the property, without any liability for other debts of the company than those secured by the mortgage. The road and property had been legally transferred to the purchasers, even if the stockholders owned the corporate franchise; and the latter was of very little benefit to them without the road and its equipments.

The purchasers then had obtained rights which could not be taken away or impaired by subsequent legislation; and to give to this act a retroactive effect would create a new obligation, and impose a new duty, which did not exist under the laws in force at the time of the purchase.

It is unnecessary to determine whether the sale and convey-

ance, under the mortgage, had the effect to transfer the franchise, though respectable courts have held that such would be the operation. It has been decided that the power to mortgage presupposed the power to transfer the beneficial use of the franchise; and that where the power was given to mortgage the property of the company, to secure the payment of loans, and a sale was made and a deed executed in pursuance of the power, assigning the road and effects, that this operated as a complete transfer of the franchises of the corporation. *Allen* v. *Montgomery Railway*, 11 Ala. 437; *Mobile & Cedar Point Railway* v. *Talman*, 15 Ala. 472; *Pollard* v. *Maddox*, 28 Ala. 321.

In *Bowman* v. *Wathan*, 2 McLean, 393, it was held that a ferry franchise was assignable, and that no difference could be perceived between a ferry and a railroad franchise.

In the case at bar, the road and all the property of the company were transferred to the purchasers under the trust deed, and were thereby released from any liability for the payment of debts which were not a prior lien. The future earnings were likewise released.

Even though the franchise remained in the original corporation, it could not be sold except by the authority of the legislature. Hence, neither the property, nor earnings of the road, nor the franchise, can be sold for the satisfaction of the debts due to the plaintiff below. *Bruffett* v. *Great Western R. R. Co.*, 25 Ill. 353.

But what was the effect upon the corporate franchise, of the act of 1861, and the deed made under the power therein contained?

While it may be true that the franchise could not be mortgaged or transferred without the consent of the legislature, what is the objection to this assent being given subsequent to the original grant? The franchise is a privilege granted by the sovereign; and the right to mortgage and assign it might have been given in the original charter. This may as well be done by a subsequent act, passed as this act was, before the sale. It was the assent of the sovereign essential to the transfer of the franchise, and necessary to enable the company

to fulfill its honest engagements; and this power of conveyance was a matter between the State and corporation. Third persons had nothing to do with it. *American Colonization Society* v. *Wade*, 7 S. & M. 663; *Arthur* v. *Com. Bank of Vicksburg*, 9 S. & M. 394.

Mr. Redfield, in his work on Railways (2 Vol. 516, note), says it is the settled doctrine in the English law that railway corporations may apply to the legislature for enlarged powers.

Railway companies are constantly applying to the legislature for an enlargement of their powers; and we must presume that the act in question was obtained by and for the benefit of the company. We regard the act of 1861 not only as a recognition of the sale, but as giving the consent of the State to the transfer of the franchise.

Even mortgages of corporate franchises have been held to have been confirmed by subsequent ratifications by the legislature. 2 Red. Railways, 517, note.

In *Shaw* v. *Norfolk County R. R. Co.*, 5 Gray, 162, it was insisted that a franchise, created by the legislature and conferred upon a particular party, could not lawfully be sold and transferred to another; and the court decided that the conveyance was good, as it was ratified and confirmed by a subsequent enactment.

The right to object to the transfer of the franchise, and its exercise by a party to whom it was not originally granted, was a right affecting the public, which the legislature, as the representative of the public interests, might waive by a subsequent enactment. *Richards* v. *Merrimack & Conn. R. R.*, 44 N. H. 127.

The State, by the act of 1861, assented to the sale of the franchise, and no other party can interfere.

The judgment is affirmed.

*Judgment affirmed.*