The Yellow River Improvement Co. vs. Wood County and another.

The YELLOW RIVER IMPROVEMENT COMPANY, Appellant, vs. WOOD COUNTY and another, Respondents.

*February 24—March 22, 1892.*

*Taxation: Flooding-dam, valuable only in connection with franchises of improvement company.*

A flooding-dam was built by a *quasi* public corporation chartered for the purpose of improving the navigation of a river. It was used solely for such purpose, was valuable only in connection with the franchises of the company, and was essential to the full exercise of the corporate rights and franchises. *Held*, that the value of such dam in connection with those franchises should not be included in the value of the land on which it was built, in the assessment of such land for taxation.

APPEAL from the Circuit Court for *Wood* County.

This is a bill in equity to restrain the sale of five separate forty-acre tracts of land in Richfield, Wood county, for taxes levied in the year 1887, on several grounds mentioned in the complaint, which, among other things, in effect alleged the incorporation and organization of the plaintiff under the laws of this state for the purpose of improving the navigation of the Yellow river in Wood and Juneau counties, having its office and chief place of business at Necedah, Juneau county; that in carrying out the object of its incorporation it became necessary for the company, as authorized by its charter, to purchase certain lands upon and adjacent to said river for the purpose of building thereon flood-dams for flowing the water of said river back from said dams to aid in floating and driving logs upon said river, and that the lands in question were purchased and held by the plaintiff for such purpose; that each of said forties was assessed at $200 only, except the S. E. ¼ of the S. E. ¼ of section 20, upon which was constructed a flood-dam at the cost of $3,000, and that the balance of said lands were used by the plaintiff for flooding purposes only, and were wholly wild and uncultivated, and of no value for any other purpose; that the forty on which said flood-dam was so constructed was assessed at $200 for the land and $5,800 for the dam.

The defendants answered, and upon the trial of the cause without a jury the parties entered into a stipulation, and the court in effect found as matters of fact, that all of the taxes on the lands mentioned in the complaint had been compromised and settled at sixty per cent. of the face thereof, except the taxes upon said forty upon which said flooding-dam was situated; that, it being desired by the parties that the question as to whether the flooding-dam was assessable as a part of that forty, it was therefore stipulated as named, and that said forty, independent of

The Yellow River Improvement Co. vs. Wood County and another.

said dam thereon, was not worth more than each of the other forties described in the complaint, that is to say, $200 each, and that said dam was in fact assessed as a part of said forty at $5,800, and was used only for the purposes stated in said complaint; that in case the court held said dam assessable as a part of said forty, or that the value of said dam should be added to the value of said forty, then that the plaintiff should be required to pay only fifty per cent. of the amount of the taxes thereon levied and in controversy, and, in case the court decided that the value of the dam was not assessable as a part of said forty, then that the plaintiff should pay the same amount of taxes on that forty as it paid under said compromise on each of the other forties; that said dam was built and was used by the plaintiff solely for the purpose of a flooding-dam, and for flowing the water of said river back, in aid of navigation on said river in floating and driving logs down the same, and was so built and was being so used by the plaintiff under and pursuant to its charter and the several amendments thereto.

And the court, as conclusions of law upon said stipulated facts, found that said flooding-dam was assessable as a part of said forty upon which the same was constructed; that the value of said dam should be and was rightfully added to the value of said forty, and was and is properly assessable as a part thereof; that, as a condition of having the taxes on said forty for the year 1887 set aside and canceled, the plaintiff should pay $103.74, with interest thereon at seven per cent. per annum from May 11, 1888, and upon such payment said tax for said year upon said forty should be canceled and discharged of record, and that neither party was entitled to costs. From the judgment entered thereon accordingly the plaintiff appeals.

For the appellant there was a brief by *Gardner & Gaynor*, and oral argument by *Geo. R. Gardner*.

*E. C. Pors*, for the respondents, contended, *inter alia*, that in valuing the land in question, together with the dam, it must not be considered as an isolated piece of land, but must be estimated in connection with the whole system of improvements of which it forms a part, its business, position, character, and revenue. *People ex rel. B. & S. L. R. Co. v. Barker*, 48 N. Y. 70; *St. Louis Bridge Co. v. East St. Louis*, 121 Ill. 238; *Tide Water Pipe Co. v. Berry*, 21 Atl. Rep. (N. J.), 490. If the forty should be sold for taxes, whether the dam had been considered in the assessment or not, the deed would take the forty together with the dam.

CASSODAY, J. The plaintiff was incorporated and organized under ch. 170, P. & L. Laws of 1857, with a capital stock of $20,000. By that act the corporators therein named were created a body corporate and politic by the name and style mentioned, " with *perpetual* succession to them and their successors and associates." Such corporation was thereby authorized and empowered, with certain limitations, among other things, to purchase, hold, sell, and convey real estate for the use of the company; to make, ordain, establish, and alter, at pleasure, rules and by-laws for the government of themselves, their officers, agents, and employees; to keep an office, record minutes of its proceedings, and determine the amount and number of shares of its stock, and the amount of each share, the mode of subscribing and paying therefor and transferring the same; the time, place, and manner of electing officers; to make such improvements in Yellow river, in the counties of Wood and Juneau, as should tend to facilitate and render more secure the running of lumber, saw-logs, etc., on said river; and for such purpose to remove all natural and other obstructions in said stream, and to remove from the banks of the same any logs or leaning trees; to straighten the channel of said river in all places deemed necessary for the purposes men-

tioned; to erect and maintain on said stream all dams, ·booms, and other improvements deemed necessary for said purposes, and with the right, of eminent domain on payment of damages; to demand and collect toll on said river for all lumber, saw-logs, etc., as prescribed. By amendments the company was authorized and empowered to take charge and control of all general drives of logs on. Yellow river from the upper forks thereof to the mouth of the same, and to charge toll therefor. Ch. 398, P. & L. Laws of 1868; ch. 186, P. & L. Laws of 1869; ch. 116, P. & L. Laws of 1871; ch. 131, Laws of 1873. See *Yellow River Imp. Co. v. Arnold*, 46 Wis. 214; *Black River Imp. Co. v. La Crosse B. & T. Co.* 54 Wis. 659; *Black River F. D. Asso. v. Ketchum*, 54 Wis. 313.

Such were the purposes and scope of the incorporation. Its powers and franchises covered nearly the whole length of the river, and traversed several towns and more than half of each of the counties named. The timber had been cut from each of the five forties mentioned; and each was assessed at $200, and none of them exceeded that amount in value, unless it be the one on which the dam was located, which was assessed at $6,000; that is to say, $5,800 by reason of the presence of the dam, and $200 for the land ·aside from the dam. The dam appears to have been constructed by the company, and for the purposes for which it was incorporated, and is used by the plaintiff solely for the purpose of a flooding-dam and setting the water back up the river in aid of navigation thereon, mentioned in the charter. For such flooding purposes, in connection with the rights and franchises of the corporation, and as a part of the plant thereof, the dam in question is probably of the value indicated; but taken by itself, and separate and apart from the balance of said plant, and independent of such corporate rights and franchises, and as a mere part of the forty, it would obviously be of no value. The

question recurs whether its value as a part of the corporate property was properly included in the valuation of the forty when assessed merely as so much land.

The question is not whether the dam should go free of taxation, as contended by the learned counsel for the defendants. It is true that taxes are to be levied upon all property except such as is exempted therefrom. Sec. 1034, R. S. Stock in any corporation is only exempt from taxation when such corporation is required to pay taxes upon its property in the same manner as individuals. Subd. 9, sec. 1038, R. S. For the purpose of this appeal we shall assume that the corporate rights, franchises, and plant of the plaintiff were or might have been taxable. The precise question here presented is whether in assessing and taxing the forty acres of land in question, as such, the value of that fraction of the corporate rights, franchises, and plant represented by and dependent upon the dam should be included.

It is to be remembered that the plaintiff is a *quasi* public corporation. Not only are its several stockholders interested in preserving the corporation in its entirety and integrity, but the public also having logs, lumber, etc., to be driven or carried down the river. Its corporate rights and franchises exist and are to be exercised upon the whole river below its upper fork. The ownership and control of the dam in question by the corporation is one of the essentials to the continued existence of the corporation in its entirety. If the value of such dam, etc., was properly included in such assessment and valuation of the forty, then the tax became a lien and burden upon the same, and the payment thereof could be enforced by a tax sale of the dam, and a tax deed of the same in pursuance of the sale. Such sale and deed, if effectual, would necessarily convey to the purchaser such corporate rights and franchises as depended upon the dam, or else they would to that extent operate to

The Yellow River Improvement Co. vs. Wood County and another.

render valueless or destroy the same. This would in effect be a severance of the corporate rights and franchises, or a *pro tanto* repeal of the charter. Such corporate rights and franchises having been given by the legislature, that body might have prescribed a method whereby they could have been severed, as, for instance, by such or other sale and conveyance. But here the judgment is not sought to be maintained upon any such statute.

It is well settled at common law that corporate rights and franchises are not subject to an ordinary execution. Such a franchise is an incorporeal hereditament, and hence is incapable, at common law, of being seized and sold on execution. *Gue v. Tide Water Canal Co.* 24 How. 263; 1 Freem. Ex'ns, § 179, and cases there cited. Thus, it has been held in Pennsylvania that "the franchises and corporate rights of a company, and the means vested in them, which are necessary to the existence and maintenance of the object for which they were created, are incapable of being granted away and transferred by any act of the company itself, or by any adverse process against it." *Susquehanna Canal Co. v. Bonham,* 9 Watts & S. 27. See, also, *Hatcher v. T., W. & W. R. Co.* 62 Ill. 477; *Sewart v. Jones,* 40 Mo. 140; *Ammant v. N. A. & P. Turnpike Road,* 13 Serg. & R. 210, 15 Am. Dec. 593, and cases cited in the note; *De Witt v. Hays,* 56 Am. Dec. 352; *Baxter v. N. & H. Turnpike Co.* 10 Lea, 488, 4 Am. & Eng. Corp. Cas. 134. In the case cited from 13 Serg. & R., TILGHMAN, C. J., said: "If a turnpike company has a right to land or other property not on the road, there is no reason why it should not be subject to an execution. But in the present instance the levy, though made in part on a lot of land contiguous to the road, had so blended the different subjects (franchises and lands) that it was difficult to separate them, and therefore the court was justified in quashing the whole proceedings." Neither the tolls nor the real estate necessary for the enjoyment of

the corporate franchises is bound by judgments or mortgages, unless they were given in pursuance of special authority from the legislature. *Steiner's Appeal*, 27 Pa. St. 313. So it has been held that "lands purchased by a railroad company beyond what are actually dedicated to corporate purposes are bound by the lien of judgments against the corporation, and are as liable to be levied in execution and sold by the sheriff as are the lands of any other debtor; but the purchaser at such sale takes only that which *is not necessary* for the full enjoyment and exercise of the corporate franchise, no matter how acquired by the corporation." *Plymouth R. Co. v. Colwell*, 39 Pa. St. 337. In that case Woodward, J., said: "But the whole lot was sold, and included the very bed of the road, as well as the ground that was needed for a depot and other buildings. As to such portions of the lot as were occupied or appropriated for these purposes, no title passed to the purchaser. . . . . The company must be protected in the possession of all that is really essential to the enjoyment of their franchise."

The same principle has received repeated sanction from the supreme court of the United States. Thus in *Gue v. Tide Water Canal Co.* 24 How. 263, it was held that "a corporate franchise to take tolls on a canal cannot be seized and sold under a *fieri facias*, unless authorized by a statute of the state which granted the act of incorporation. Neither can the lands or works essential to the enjoyment of the franchise be separated from it and sold under a *fi. fa.*, so as to destroy or impair the value of the franchise." Some things said by Taney, C. J., in that case are equally applicable here. They are to the effect that the property seized was of little or no value "apart from the franchise of taking toll," but was nevertheless "essential to the working of the canal," and in ·connection with such franchise was of great value, and would be rendered utterly valueless by a sale. He said: "Now, it is very

The Yellow River Improvement Co. vs. Wood County and another.

clear that the franchise or right to take toll on boats going through the canal would not pass to the purchaser under this execution. The franchise, being an incorporeal hereditament, cannot, upon the settled principles of the common law, be seized under a *fieri facias*. If it can be done in any of the states, it must be under a statutory provision of the state." That case has since been repeatedly cited with approval. *Jackson v. Ludeling*, 21 Wall. 623; *Hammock v. L. & T. Co.* 105 U. S. 90; *East Ala. R. Co. v. Doe*, 114 U. S. 340–353; *Buncombe Co. Comm'rs v. Tommey*, 115 U. S. 135.

The principles mentioned apply with equal force to tax proceedings. The cases go upon the theory that the rights, franchises, and plant essential to the continued business and purposes of a corporation are not to be severed, broken up, or destroyed without express legislative authority, but, on the contrary, are to be preserved in their entirety, and for that purpose are deemed segregated from any other property owned by the corporation. We must hold that the value of the dam, as an essential portion of the corporate rights, franchises, and plant, was improperly included in the assessment of the forty acres of land upon which it was located.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with direction to enter judgment in favor of the plaintiff and against the defendants in accordance with the stipulation and this opinion.