The Fond du Lac Water Co. vs. The City of Fond du Lac.

The Fond du Lac Water Company, Appellant, vs. The City of Fond du Lac, Respondent.

*May 3 — May 24, 1892.*

*Taxation: Property and franchises of water company, how assessed: Powers of board of review.*

1. An assessment of several lots, on which are the pumping works and station of a water company, merely by their numbers and the number of the block, is not sufficient to lay the foundation for, or to give the board of review jurisdiction to make, a valuation, as

against those lots, of the entire property of the company, including its mains, pipes and hydrants throughout the city, and its rights, privileges, and franchises.

2. Under sec. 1061, R. S., the board of review has no authority to raise the valuation of any property, real or personal, on the assessment roll, without evidence or against all the evidence.

APPEAL from the Circuit Court for *Fond du Lac* County.

This action was brought to enjoin and restrain the defendant city and its clerk from proceeding to levy taxes upon lots 37, 38, 39, 40, 48, 49, and 50, of block 26 of the original plat of the city, the property of the plaintiff, valued for taxation in 1890 by the assessor at $40,000, and increased by the board of review to $55,000, until a revision and revaluation of the same might be had; and that if the tax shall have already been levied the defendants be restrained from delivering the warrant to the city treasurer until such revision could be had. The plaintiff prayed for a perpetual injunction, and for such further and other relief in the premises as might be just, upon the ground, among others, that said assessment and the increase thereof by the board of review were largely in excess of the true valuation, and that the rule of valuation applied to it was different and of a higher rate than the rules of valuation applied to other corporate property of the same and kindred classes in the city; that the plaintiff was cited before the board of review to show cause why the assessment of $40,000 should not be raised, and its treasurer appeared before the board, and asked for a reduction of the assessed value of $20,000, and tendered proof on the subject of value, which the board declined to receive; that the board, without proof or other inquiry, increased the assessment as aforesaid, instead of reducing it, which increase it is alleged was fraudulent, wilful, and malicious. The answer denies these allegations, and alleges that at the time the value of the plaintiff's property was much greater than the valuation placed upon it by the board of review.

The court found that on said premises, at the time of the assessment and levying of the tax, were located the pumping house and pumping machinery of the plaintiff, and appurtenant thereto and connected therewith were iron water mains and pipes extending under certain streets of said defendant, with hydrants and laterals attached, by means of which the plaintiff company carries on its business of supplying the defendant city and its inhabitants with water; that the plaintiff's said real estate, and the buildings and machinery thereon, and the water mains, pipes, laterals, and hydrants, cost and were worth at least $150,000 at the time of the assessment and the action of the board of review; that the assessors of the city for 1890, in making their assessment, assessed plaintiff's said property, including said water mains, pipes, laterals, and hydrants, at the sum of $40,000, and the board of review raised it to the sum of $55,000; that during the session of the board of review the plaintiff appeared before the board, and made a statement of its earnings and expenses, and its treasurer was orally examined by said board in regard to the value of said property for taxation; that the assessment was made by the assessor and raised by the board in good faith, and not fraudulently or with any intention to place an excessive valuation on said plaintiff's said property, and that the action of the board of review in raising the assessment was taken on sufficient evidence; that the full value of the property which could ordinarily be obtained therefor at private sale exceeded the valuation fixed thereon by the board of review, and that the assessment as fixed by said board was not excessive; that the income of the plaintiff from its property for the year 1890 was not less than $16,000.

The city clerk, and *ex officio* clerk of the board of review, testified to the appearance of the treasurer of the plaintiff company before the board of review, and filing with it a communication protesting against any increase of the assess-

ors' valuation for the purposes of taxation of the property of the company, and asking that the assessors' valuation be reduced to correspond with the taxable values fixed on other property in the city somewhat similarly situated. This communication stated that the company has never declared a dividend; that its earnings do not clear its expenses; that it was hoped to make the property valuable; that it was organized with a capital stock of $200,000, and bonded indebtedness of $155,000; that its income last year from private sources was less than $6,000; that its expenses exceed its income; officers' salaries, except superintendent, are not included, not being paid them; that the lots, buildings, and machinery, which were assessed at $40,000, cost the company only about $26,500; and insisting that $15,000 or $20,000 was a large present valuation of them for taxable purposes. By this communication he offered to submit to inspection the books of the company, and the treasurer offered to be examined under oath as to the truth of his statement. The clerk further testified that there was no proof taken under oath by the board of review in relation to this assessment; that the treasurer was sworn and repeated this statement, and no other proof was taken. On cross-examination he said there was no other record made than that L. Muenter appeared, in response to notice, was duly sworn, and made statement as to increase and expenses of the company, and presented a written document protesting against any increase of the assessors' valuation of the water works, and requested that the valuation be reduced to correspond with the value of their property; that is all of the record testimony; that he did not remember that any other questions were asked him; that he read some other papers to the board besides those filed; that the assessment did not state the property included, the entry being, "*The Fond du Lac Water Company*, 48 feet of lot 37, all of 38, 39, 40, 48, 49, 50, of block 26, original plat, valuation by assessors, $40,000."

Question arose at the trial as to what was considered by the board of review as included in said assessment, or what formed the basis on which the board raised it.   The court allowed the witness to testify, and other proof to be given, to show that the assessment was intended to cover the real estate, including the hydrants, mains, the plant, and connections generally of the plaintiff.   Objection to this testimony was made on the ground that there was nothing else entered on the roll than the mere description of the lots as a subject of taxation, but the court permitted the testimony to be given.   It appeared, among other things, that the company had cast-iron mains and wrought-iron laterals, about four miles of mains through the town, and fifteen miles of pipe; and considerable other testimony was given on the trial tending to show that the entire property of the plaintiff, consisting of pumping works, mains, laterals, hydrants, and plant, was worth much more than $55,000.

The plaintiff put in evidence an ordinance of the city granting to the plaintiff corporation, during the term of its existence, the franchise and privileges stated in the opinion. The plaintiff corporation was organized under the general law of the state.   R. S. ch. 86.   The defendant called a member of the board of review to testify, in answer to a question, what property the board considered as pertaining to the lots assessed in raising the valuation, which was objected to by the plaintiff, and he answered all the hydrants and pipes leading thereto and the plant; that the company had down at that time about fifteen miles and a half of pipe.

The court held that the valuation placed by the board on said property was just and proper, and the tax was valid and lawful; and entered judgment dismissing the complaint and dissolving the injunction theretofore granted.   Exceptions were taken to the finding, particularly to that portion that the action of the board of review was taken on sufficient evidence, and that the court did not find that the in-

crease by the board was a mere exercise of arbitrary power, and to the finding that the tax as fixed by the board was not excessive, and to the part that the property assessed included water mains, pipes, laterals, and hydrants, etc.

*Edward S. Bragg*, for the appellant.

For the respondent there was a brief by *Edward W. Phelps*, attorney, and *Joseph W. Hiner*, of counsel, and oral argument by *Mr. Hiner*.

PINNEY, J. The corporation plaintiff was organized and exists as such under ch. 86, R. S., and by sec. 1780 had the power to make and enter into any contract with the city defendant to supply it with water for fire and other purposes, upon such terms and conditions as might be agreed upon, and might, by the consent of and in the manner agreed upon with its proper authorities, use any street, alley, lane, park, or public grounds for laying water pipes therein, provided no permanent injury should be done thereto; and the city might by contract acquire the right to use the water supplied by such corporation, or such portion of it as it might desire, upon such terms and conditions as might be agreed upon by such corporation and the authorities of such city. The corporation plaintiff and the city entered into arrangements as contemplated by the statute, evidenced by an ordinance of fourteen sections, regulating their respective rights and duties. The more important provisions of this ordinance consist of a grant to the plaintiff of the franchise for and during the term of its corporate existence, subject to the right of purchase and the conditions and the forfeiture therein provided, " to erect, construct, complete, maintain, and operate water works in said city for supplying it and the inhabitants thereof and its vicinity with water for public and private purposes, and to use, in the present and future limits of the city, subject to the limitations, etc., therein fixed, the

328    SUPREME COURT OF WISCONSIN.    [82

The Fond du Lac Water Co. vs. The City of Fond du Lac.

streets, alleys, public ways, and the bridges and beds of
Fond du Lac river, and of its forks, and of De Neveu
creek and other water ways, for the purpose of laying, tak-
ing up, and repairing mains, pipes, hydrants, and other ap-
paratus," vesting in the plaintiff all the powers possessed
by the city, and which it could lawfully grant for that pur-
pose, under its charter and acts amendatory thereof; and
as the inducement for the plaintiff to enter upon the con-
struction of such works, the franchise thereby vested in it
was to remain in it during its term of corporate existence,
and the city agreed to rent of it 140 hydrants for and dur-
ing the term of thirty years from the completion of such
works.

The company thus acquired not only the corporate
rights and franchises resulting from its organization under
the general law, but the valuable and important franchises
and rights granted to it by the city, which will doubtless
increase in value from year to year as the city becomes
more populous and prosperous. These franchises were
grants in gross of incorporeal hereditaments, and not grants
appurtenant to any particular land, lots, or estate, in the
strict technical sense of the term. They were granted to
the plaintiff without reference to its ownership of these
or any particular lots, and it was not necessary that it
should purchase or own any lots or lands in fee to carry
out its enterprise and make the franchises with which it
had been clothed for important public purposes available,
as it might well secure all it needed as to lots or lands by
a lease for a long period of years, with the right of renewal
from time to time. The plaintiff corporation, though cre-
ated primarily for private gain, was a *quasi* public corpo-
ration, clothed with an important public trust, and, having
secured these valuable rights, proceeded to lay its water
mains and pipes to the extent mentioned in the preceding
statement; but it built its pumping works and station on

the several lots of land purchased by it, herein mentioned as the subject of the assessment in question.

The questions presented by the record are: (1) Whether an assessment of the several lots described in the complaint, on which the pumping works and station of the plaintiff are situated, merely by their numbers and the number of the block in which they are situated, is an assessment of the mains, pipes, hydrants, and the rights and franchises of the plaintiff, or merely of the lots themselves; and, if so, whether it is a valid assessment. (2) Whether the action of the board of review in arbitrarily and without evidence raising the valuation of these lots, alleged to be excessive, from $40,000 to $55,000, was void, so that the tax levied thereon should be enjoined.

1. Taxes are to be levied upon all property in this state, except such as is exempted therefrom (R. S. sec. 1034), and it will be seen that none of the property of the plaintiff hereinbefore mentioned is within the category of property exempt from taxation (R. S. sec. 1038). Inasmuch as the property of the corporation is not exempt, but is taxable, stock therein is exempt from taxation. R. S. sec. 1038, subd. 9. The franchises, rights, and privileges acquired as hereinbefore stated are property, the title to which is vested in the plaintiff, and the mains, pipes, hydrants, and machinery are really of little or no value without the franchises annexed, which render the use of them valuable and productive, and without which they could not be used or operated. In short, the entire plant and works are to this extent, no doubt, an entirety within the rule laid down in *Yellow River Imp. Co. v. Wood Co.* 81 Wis. 554; and in this sense the lots in question, used with these franchises, mains, pipes, and hydrants, etc., are a part of such entirety, and are all taxable together as such, but not in separate parcels or items. In virtue of the intimate and necessary relation of the lots and the mains, pipes, and hydrants,

which extend to most parts of the city, with the franchises and privileges of the plaintiff, it would seem that, as a subject of taxation as well as of sale under judicial process, they are to be regarded as *an entirety;* and as the plaintiff is a *quasi* public corporation, a dismemberment or separation of the entire plant under such proceedings cannot be allowed, for the reasons fully set forth in the opinion of Mr. Justice CASSODAY in the case above referred to, wherein it is stated that " the cases go upon the theory that the rights, franchises, and plant essential to the continued business and purposes of such corporations are not to be severed, broken up, or destroyed without express legislative authority, but, on the contrary, are to be preserved in their entirety." This rule applies, however, only to property and lots the use of which is essential to the exercise and enjoyment of the franchises of the corporation. All such property of the corporation must be regarded and entered upon the assessment roll, and treated throughout, for all purposes of taxation, as an entirety, and valued as such. Property not so annexed and necessary or essential to the exercise and enjoyment of the franchises of the corporation may properly be treated and dealt with separately, as in the case of property belonging to a natural person. Within this rule, the assessment and taxation of these particular lots whereon the pumping station and works of the company are situated, separate and apart from the rest of the property, and merely as so many lots, cannot be justified. It is not necessary to do more than refer to the rule so well stated in that case, and abundantly fortified by the best-considered cases on the subject.

The only subject of taxation entered upon the assessment roll in this case is simply certain specified lots in block 26, without the least reference to the works of the plaintiff, its mains, pipes, and hydrants, or its corporate rights or franchises, either in detail or as a plant or en-

tirety. The proceeding must be regarded and treated as one against the lots only, particularly as it does not appear that the franchises, mains, pipes, etc., are by the grant by which the company holds the title to the lots made appurtenant thereto, nor are the rights, franchises of the plaintiff, etc., made appurtenant to the lots by the grant under which it received them. All that can be reasonably claimed is that the word *appurtenances* will carry with it easements and servitudes used and enjoyed with the lands for the benefit of which they were created. Even an easement will not pass as an appurtenance unless it is necessary to the enjoyment of the thing granted. *Linthicum v. Ray*, 9 Wall. 243; *Humphreys v. McKissock*, 140 U. S. 313, 314. The only union between the subjects mentioned is in their use to enable the plaintiff to carry out the purposes of its corporate existence. It cannot, we think, be contended that a sale of these lots under the tax levied upon this assessment, as thus specified and entered upon the roll, could be followed by a tax deed that would be operative to convey the mains, pipes, hydrants, and franchises and privileges of the plaintiff. If the taxing officers designed to proceed against and assess for taxation this entire property, it was certainly indispensable that it should have been entered upon the roll by some general, yet apt, words, describing it as embracing the plant, pipes, and franchises, as a subject of assessment, with reasonable certainty.

The assessment of the lots as such merely cannot be extended or enlarged by parol proof of intention, nor could the assessors or board of review obviate the defect by receiving proof of the value of property of the plaintiff subject to taxation, but not properly entered on the roll, to sustain or justify an assessment of the specific property entered at an unjust and excessive valuation for it as thus entered. It is entirely plain from the evidence that the assessor, as well as the board of review, in valuing the lots,

included in their valuation the entire value of the mains, pipes, hydrants, etc.,— in short, of the entire plant, works, and franchises of the plaintiff; and their action in thus making such valuation of the lots was attempted to be sustained at the argument. The valuable rights and franchises of the plaintiff would not pass by a mere conveyance of the lots, without further description, and without these rights and franchises the pumping works, mains, pipes, and hydrants would be of little or no value, and, as we have seen, could not be used or operated at all.

It was contended by the appellant that these rights and franchises are not taxable, and authorities under the New York statute were cited to that effect. *Boreel v. New York,* 2 Sandf. 552; *People ex rel. Citizens' G. L. Co. v. Assessors,* 39 N. Y. 81. If it could be maintained that the franchises and privileges in question cannot be taxed, and as without them the works of the plaintiff will be of little or no value, then it would be plain that the valuation of the lots is grossly excessive. But we think that our statute is broader in its terms, requiring all property not exempted to be taxed, and that it not only justifies, but requires, that the franchises and privileges of a corporation, which are clearly property of the corporation, should be taxed. By sec. 1035, R. S., it is provided that the terms "real property," "real estate," and "land," in the statute relating to taxation, "shall include, not only the land itself, but all buildings, fixtures, improvements, *rights,* and *privileges* appertaining thereto;" and this statute, it is urged, warrants the assessment as made in this case. But this statute does not imply that such property as the mains, pipes, and hydrants, with the rights and franchises of the plaintiff by which alone its works are made valuable and productive, can be assessed by a mere description of the lots on which the pumping works are situated, and this, too, without any reference to the water works in connection with which the

lots are used. Indeed, the water works and franchises of the company are the principal thing, to which the ownership and use of the lots in connection therewith is in a practical point of view rather an incident, instead of being the principal thing, embracing in their description the water works and franchises of the company. We hold, therefore, that the assessment on the roll returned to the board of review by the assessor was not sufficient to lay any foundation for or to give the board jurisdiction to make a valuation of the entire property, as against these particular lots.

2. It was held by this court, under the statute in force from 1868 to 1871 (Laws of 1868, ch. 130, sec. 25) both as to real and personal estate, that the board of review could not arbitrarily increase the valuation of the assessor without any proof being furnished, but could do so only upon the testimony of persons examined under oath, and that all examinations were required to be reduced to writing and carefully preserved on file in the office of the clerk; that if the board proceeded without such proof its act in raising the valuation " would be unauthorized and impose no obligation upon the property owner to pay the taxes." *Phillips v. Stevens Point*, 25 Wis. 594, 596; *Steele v. Dunham*, 26 Wis. 394; *Milwaukee Iron Co. v. Schubel*, 29 Wis. 444, 452. In the latter case the court say : " The board arbitrarily affixed values to the property, in utter disregard of the sworn statements of witnesses examined before them. This action of the board was wholly unauthorized and plainly in excess of their jurisdiction. There was no conflict in the testimony whatever. The board were bound to take these uncontradicted statements of the witnesses under oath as to the value of the property, and should have corrected the assessment accordingly. . . . Where there is a conflict of evidence, and the real facts are in dispute, the decision of the board fixing the valuation might well be held final. . . . It *appeared* from all the evidence that the real es-

tate of the company had been valued too high by the assessor, and the law required them to act upon that evidence, *and fix a valuation in accordance with it.*" Such was clearly the law applicable to the proceeding in the present case before the board of review; for although the section referred to was amended by sec. 1, ch. 166, Laws of 1871, by adding a proviso by which the board of review were authorized to increase or diminish the assessors' valuation without hearing witnesses, as explained and held in *McIntyre v. White Creek*, 43 Wis. 620, and *Shove v. Manitowoc*, 57 Wis. 7, yet the section as revised, and now appearing as sec. 1061, R. S., is the same in substance as to the matter here in question as the original act of 1868, with power granted to the board to compel the attendance and examination of witnesses. The board, by sec. 1061, R. S., are required, "under their official oaths, to carefully review and examine said roll and statement, and all valuations of *real* and personal property," and they are required "to hear and examine any person or persons who shall appear before them in relation to the assessment of *any* property upon said roll; . . . and if it shall appear that *any* property has been valued by the assessor too high or too low, they shall increase or lessen the same. . . . The board of review shall, when satisfied *from the evidence* taken that the assessor's valuation is too high or too low, lower or raise the same accordingly, whether the person assessed *appear before them or not.* . . . But they shall not raise any assessment . . . unless the person assessed, if a resident of the town, city, or village, shall have been duly notified in time to appear and be heard before the board in relation thereto." And the clerk is required to "keep a careful record of all changes made and valuations determined on by the board, and shall *reduce to writing and preserve the examinations and the statements* of every person and witness taken by the board."

The claim that the board of review may arbitrarily, and without evidence, raise the valuation of real estate by the assessor, and that the provisions requiring them to act only upon and according to evidence for that purpose apply only to valuations of personal estate, derives no support from the language of the act or the decisions of this court made under it. The case of *McIntyre v. White Creek*, 43 Wis. 620, was decided while the proviso of 1871 was in force, and before the section as thus amended was revised and materially changed, requiring the action of the board in all cases to be based on the *evidence taken*, and that the evidence shall be reduced to writing and preserved. The case of *Shove v. Manitowoc*, 57 Wis. 7, related only to personal estate, and there is nothing in the case to warrant the inference that any different rule applies under the statute as it now stands, in the case of real estate, than in respect to personal estate.

There is no competent evidence to show that any other witness was sworn and examined before the board than Muenter, the treasurer of the company, nor that any testimony was given materially controverting his statement. The testimony of the city clerk is positive and decisive on this point, and the statement of the treasurer, uncontradicted, shows that the assessment should have been reduced. It did not appear from any proper evidence adduced before the board that the assessment ought to be raised. The statute regulates the method of proceeding before the board, and any action not in conformity with its warrant was without jurisdiction, and void. The radical departure from the course of proceeding prescribed by the statute, resulting in the arbitrary raising of the valuation without and against the evidence, when it ought to have been lowered upon the showing made, deprived the plaintiff of important rights secured by the law, going to the justice and ground-work of the tax levied on the increased

The Fond du Lac Water Co. vs. The City of Fond du Lac.

valuation, and entitles the plaintiff to relief just as clearly
as if, having paid the taxes under protest or duress of
property, it had brought an action for money had and re-
ceived, which is an equitable action, to recover it back, and
in which it would be entitled to recover under the decision
in *Phillips v. Stevens Point,* 25 Wis. 596.

For these reasons the judgment of the circuit court must
be reversed, and the case remanded for further proceedings
according to law.

ORTON, J. I fully agree with the decision and opinion
in this case on the questions legitimately presented by the
record. The complaint is: (1) That the assessor, in valu-
ing the lots and the buildings, reservoirs, and machinery
thereon, took into consideration the water mains, lateral
pipes, and conduits connected therewith for distributing
the water throughout the city, together with the rights,
privileges, and franchises of the company under which
they were used, as appurtenant thereto and enhancing
the value thereof, and by reason thereof assessed said lots
and improvements thereon 100 per cent. higher than their
true value. (2) That the board of review arbitrarily and
without evidence raised said assessment $15,000, notwith-
standing the company plaintiff appeared before them, and
attempted to show that said assessment was too high,
and asked for a reduction thereof. These were the only
questions before this court, and the decision is: (1) That
the assessment was illegal and void by reason of the as-
sessor so taking into consideration the mains, pipes, etc.,
and the franchise of the company, as appurtenant to said
lots, and as enhancing their value. (2) That the adjudi-
cation of the board of review was void, because arbitrary
and without evidence.

To the decision and opinion, to this extent, I fully assent,
and submit and protest that these were the only questions

The Fond du Lac Water Co. vs. The City of Fond du Lac.

before the court, and the only questions presented or argued by counsel on either side. But the able and learned opinion is carried much further, so as to embrace and decide one of the most important and doubtful questions connected with the subject of taxation, and a question entirely new to this court and not presented by the record in this case or by counsel outside of it, and to establish a principle against the universal practice of the taxing officers of this state, so far as I have been able to ascertain. That question is: Are the franchises of this corporation assessable as its property, separate and distinct from its other property? It is decided in this case that its lots and improvements thereon ought not to have been assessed in connection with the mains, pipes, etc., and the franchises as appurtenant thereto. The lots are the subject of taxation in the list, and the mains, pipes, etc., and franchises are considered only as appurtenances thereto to enhance their value. There was no assessment of *franchises*, as separate property, in the case. But outside of the case it is decided, also, in the opinion, that the franchises of this corporation are assessable, separate and distinct from its other property. From this part of the opinion I most respectfully dissent. I do so, however, not because I might not have the same opinion if the question should be raised in a proper case, but because the question is not presented in this case. It will be *timely* to decide such an important question when it is presented and fully argued, examined, and considered.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for further proceedings according to law.

See note to this case in 16 L. R. A. 581; also note to *Yellow R. Imp. Co. v. Wood Co.* (81 Wis. 554), in 17 L. R. A. 92.— REP.