STATE EX REL. ASHLAND WATER COMPANY, Appellant, vs. WHARTON, City Clerk, Respondent.

*September 25 — October 21, 1902.*

*Taxation: Water companies: Real or personal property? Reassessment.*

An assessment of all the property of a water company (including certain lots and the buildings thereon, the intake pipe, mains, distributing pipes, and hydrants throughout the city, and its rights, privileges, and franchises) as an entirety was not void merely because it was classified as real estate instead of personal property; and being valid, an attempted reassessment was unauthorized and void.

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Reversed.*

This is an appeal from a judgment of the circuit court affirming the proceedings of the common council at a regular meeting thereof held December 10, 1901, reassessing the taxes upon the relator's property, described, for the years 1891, 1892, 1893, and 1894, which proceedings were taken to the circuit court on *certiorari.*

The return to the writ shows, in effect, that the property of the relator was assessed by the assessor and board of review of the city of Ashland in 1893, as appears by the assessment roll of that year, as follows: On page 9 of such assessment roll, which page is headed, "Real Estate Assessment for the City of Ashland, in the County of Ashland, for the year 1893." Under the head of "Owner's name," "*Ashland Water*

*Company."* Under the head of description, "Lots 19, 20, 21, 22, 23, and 24 in block 46, and block 8, included in Ellis division, together with its buildings, houses, pumping house, and station used in connection with the operation of said works, and its intake pipe, mains, distributing pipes, and hydrants throughout the city, and its rights, privileges, and franchises, all in its entirety." Under the head of "Value Fixed by Assessor," "$200,000." The same valuation under the head of "Value Fixed by the Board of Review." The city clerk carried out against such assessment a tax of $4,000. Also on the same page: *"Ashland Water Company,"* "assessment omitted in 1891," giving the same description as above, and assessed at "$165,000." The city clerk carried out against such assessment a tax of $3,300. Also on the same page: *"Ashland Water Company,"* "assessment omitted in 1892," giving the same description as above, and assessed at "$175,000." The city clerk carried out against such assessment a tax of $3,500. The amount of taxes so carried out against such descriptions for the three years mentioned amounted, in the aggregate, to $10,800. Such taxes, not having been paid to the city treasurer, were returned to the county treasurer as delinquent. Thereupon, and on May 15, 1894, the county treasurer sold the real estate so described for the payment of the $10,800,—the aggregate amount of such taxes for the three years mentioned,—with interest and charges, making in all the sum of $11,512.22, and issued his certificate of sale (No. 59) therefor, in which it was stated that the county or its assigns would be entitled to a deed of conveyance of the lands so described in three years from the date thereof, unless sooner redeemed from such sale according to law; describing the lots and blocks mentioned.

The return to the writ also shows, in effect, that the property of the relator was assessed by the assessor and board of review of the city in 1894; that a true copy of such assessment, as it appears upon the assessment roll of the city for

that year, is as follows: On page 18 of assessment roll for that year, which page is headed: "Real Estate Assessment Roll for the City of Ashland, County of Ashland, for the Year 1894." Under the head of "Owner's Name," *"Ashland Water Company."* Under the head of "Descriptions," "Lots 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, and 24 in block 46, and all of blocks 7 and 8, in Ellis division, including power house, machinery, engine, boilers and pumps, intake pipe, water mains, pipes, outfit, and franchises." Under the head of "Value Fixed by Assessor," $150,000. Under the head of "Value Fixed by Board of Review," $155,000. The amount of taxes so carried out against such descriptions for the year 1894 was $2,687.20. Such tax, not having been paid to the city treasurer, was returned to the county treasurer as delinquent. Thereupon, and on May 21, 1895, the county treasurer sold the real estate so described for the payment of such last-mentioned sum for the tax of 1894, with interest and charges, making, in all, $2,875.20, and issued his certificate of sale (No. 3,787) therefor, in which it was stated that the county or its assigns would be entitled to a deed of conveyance of the lands so described in three years from that date, unless sooner redeemed from such sale according to law; describing the lots and blocks, as mentioned.

It further appears from such return that November 20, 1901, the county treasurer informed the board of supervisors of the county that each of such tax certificates, numbered 59 and 3787, respectively, was illegal, for the reason that the lots and blocks therein described were a part of the property of the relator and included its franchises, and therefore should have been assessed as personal property, instead of being assessed as real estate, and recommended that such tax certificates, and each of them, be canceled as illegal, and that the county board order an assessment of the relator's property for the respective years mentioned, and that the same be charged to the city, with instructions to properly extend

the amount of the taxes and omitted taxes for the four years mentioned, amounting in all to $13,487.20, upon the personal property tax roll for the year 1901, against and opposite the name of the relator. November 23, 1901, the county board of supervisors of the county, at its annual meeting, determined by resolution the amount of taxes apportioned to and levied upon the city of Ashland for the then current year; the aggregate amount being $71,423.50, which included the $13,487.20 mentioned, and $3,610.87 in addition, making, in all, $17,098.07, for "illegal taxes." Thereupon, and on November 26, 1901, the county clerk certified such taxes to the city clerk of the city of Ashland. Thereupon, and on December 10, 1901, the common council of the city, at a regular meeting thereof, and after reciting, in effect, the facts stated, adopted a resolution, among other things, to the effect that there was thereby reassessed upon the real and personal property and the franchises of the relator the $13,487.20 mentioned; and the city clerk was thereby directed to extend such amounts opposite the personal assessment of the relator in the tax roll of 1901, as provided in sec. 1087, Stats. 1898, and sec. 13, ch. 351, Laws of 1899, for the reason that the assessment was made against the real estate of the relator, instead of being made as a personal assessment against the company. Thereupon, and pursuant to and in accordance with such resolution, the city clerk carried out on the tax roll of the city for the year 1901 the amount of taxes so assessed, and containing, among other things, under the name of the owner, *"The Ashland Water Company,"* and under the head of "Value of Real and Personal Property and Franchises of Water Company," $350,000. Under the head of "Total Valuation," $350,325.88. Under the head of "Total Amount of Taxes of 1901 Assessment," $8,783.13. Under the head of "Ordered Assessed by Common Council . . ." $13,487.20, giving the amounts for the several years, making up the sum as mentioned, and giving

the grand total amount of taxes against the relator as $22,270.33.

From the order and judgment of the circuit court rendered and entered January 9, 1902, affirming such reassessment so made by the common council, the relator brings this appeal.

For the appellant there was a brief by *Tomkins & Tomkins,* attorneys, and *Lamoreux & Shea,* of counsel, and oral argument by *W. M. Tomkins.*

The cause was submitted for the respondent on the brief of *M. E. Dillon,* city attorney.

CASSODAY, C. J.   The trial court held that the several assessments for the years 1891, 1892, 1893, and 1894 were each illegal and void because the relator's property was assessed in each of those years as real estate.   It is said that the court reached such conclusion by reason of the former decisions of this court.   *Yellow River Imp. Co. v. Wood Co.* 81 Wis. 554, 51 N. W. 1004; *Fond du Lac Water Co. v. Fond du Lac,* 82 Wis. 322, 329, 52 N. W. 439; *State ex rel. Milwaukee St. R. Co. v. Anderson,* 90 Wis. 550, 63 N. W. 746; *State ex rel. Badger I. Co. v. Anderson,* 97 Wis. 114, 72 N. W. 386; *Pittsburg Testing Laboratory v. Milwaukee E. R. & L. Co.* 110 Wis. 633, 643, 86 N. W. 592.   In the *Fond du Lac Case* it was held that all property in this state was taxable, except such as was exempt by statute, and that, as none of the property of the water company therein mentioned was exempt, it was all taxable; and it was also held in that case, among other things, in effect, that an assessment of several lots on which were located the pumping works and station of the water company, merely by their numbers and the number of the block, was insufficient to cover "the entire property of the company, including its mains, pipes, and hydrants throughout the city, and its rights, privileges, and franchises," and hence that the board of review had no jurisdiction to make a valuation of such entire property against such lots.   Such de-

462    SUPREME COURT OF WISCONSIN.    [OCT.

State ex rel. Ashland Water Co. v. Wharton, 115 Wis. 457.

fect in the assessment in that case is obviated in this case, since each of the assessments not only covered the lots and blocks and the division, but added, "together with its buildings, houses, pumping house, and station used in connection with the operation of said works, and its intake pipe, mains, distributing pipes, and hydrants throughout the city, and its rights, privileges, and franchises, all in its entirety." It appears that prior to sec. 1037a, Stats. 1898, there was no statute giving detailed directions for the valuation and taxation of such rights, privileges, and franchises. *State ex rel. Milwaukee St. R. Co. v. Anderson,* 90 Wis. 550, 63 N. W. 746; *State ex rel. Badger I. Co. v. Anderson,* 97 Wis. 114, 72 N. W. 386. That section declares, in effect, that such property as was owned by and assessed against the relator in the case at bar should "be deemed personal property for the purpose of taxation." Sec. 1037a. The statute has for many years provided for the reassessment of real estate whenever any tax or assessment thereon has been set aside or determined to be illegal or void by the judgment of a "court or the action of the county board." Sec. 1087. In 1899 a new section was added to the statute, as follows:

"Sec. 1087a. Any property described in section 1037a shall be subject to reassessment for reasons stated, and in the manner provided in section 1087." Sec. 13, ch. 351, Laws of 1899.

There are other sections of the statute providing for the reassessment of special assessments and general taxes. Secs. 1210a–1210h. The statute also provided for the assessment of real estate omitted "by mistake or inadvertence." Sec. 1059. That section has been amended so as to apply to personal property. Ch. 50, Laws of 1899. But we are not aware of any statute authorizing the reassessment of a valid tax. Can it be fairly said that the assessment in the case at bar was void merely because the property was classified as real estate instead of personal property? As indicated, the as-

·sessment was just as full and complete as it could have been had the entire property been classified as personal property. Had it been so classified, still the statute cited required that the assessment should include "all real estate owned or used by the person or corporation engaged in such business and necessary to the prosecution thereof." Sec. 1037*a*. We must hold that the assessment was valid for each of the several years mentioned. Being valid, there was no authority nor ground nor reason for a reassessment. The statute prescribed a method for enforcing the payment of taxes assessed on personal property. Sec. 1127, Stats. 1898. Had the tax warrant been issued to the sheriff within the time prescribed by that section, there could have been no doubt that he would have had "the same power to collect the unpaid taxes specified" therein that he would have had "upon execution issued out of a court of record," for the section so declares. Id. Whether there is still a right and a remedy to enforce collection of such taxes is a question not before us. The result is that such attempted reassessments were without authority of law and void.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with direction to reverse and set aside such reassessments, and for further proceedings according to law.