THE STATE EX REL. MILWAUKEE STREET RAILWAY COMPANY, Respondent, vs. ANDERSON, Appellant.

*April 27 — September 26, 1895.*

*Taxation: Corporations: Street railway company: Assessment of franchises and other property: Certiorari to review assessment: Judgment: Constitutional law: Uniformity in rule of taxation: Assessors and board of review: General or special law? City charter.*

1. The franchises and property of electric lighting companies cannot be assessed against a street railway company which claims to own them, such lighting companies having no power to transfer the same so as to disable themselves from performing the duties which they owe to the public.

2. Under sec. 1034, R. S. (providing that taxes shall be levied upon all property in this state, except such as is exempted therefrom), and subd. 14, sec. 1038, as amended by ch. 285, Laws of 1889 (providing that the general exemption of railroad property "shall not apply to any railroad . . . operated by horse, cable, or electrical power . . . in any city or village"), the franchises of an electric street railway company are liable to assessment and taxation, notwithstanding the failure of the legislature to give any detailed directions for the valuation and taxation thereof.

3. The franchises of such a company are to be regarded, for the purposes of taxation, as personal property, and, together with all its other property reasonably necessary for their use and exercise (including tracks, ties, poles, wires, etc., and also power houses and the lands on which they stand), are to be assessed as an entirety in the assessment district in which the company has its "principal office or place of business." R. S. secs. 1040, 1041.

4. An assessment of the franchises and other property of such a company, as an entirety, not having included its power houses and the lands on which they stood, which were necessary to the use and exercise of the franchises, and which were assessed separately as real estate in the district in which they were located, the assessment was void.

5. On *certiorari* to review the proceedings of the board of review in respect to an assessment, where that body has been dissolved and has lost control of the matter, the duty of the court is limited to either an affirmance or reversal of the assessment.

6. Uniformity in the rule of taxation, required by sec. 1, art. VIII, Const., is not violated by diversity in the methods of electing or appointing assessors in the several cities, or in the constitution of their respective boards of review.

7. The provisions of the city charter of Milwaukee in respect to the election of assessors and the constitution of the board of review, contained in a statute (secs. 2, 6, 12, subch. 18, ch. 184, Laws of 1874) amending the former charter, were not a special act for the assessment and collection of taxes, within the meaning of subd. 6, sec. 31, art. IV, Const.

APPEAL from a judgment of the circuit court for Dodge county: A. SCOTT SLOAN, Circuit Judge. *Affirmed.*

A common-law writ of *certiorari* was issued out of the circuit court to the appellant, as city clerk of Milwaukee and *ex officio* clerk of the board of review of that city, to bring before the court an assessment of the relator's property for 1894, in order that it might be corrected or reversed and set aside. It appeared from the petition that the relator had its principal office in the Third ward of Milwaukee, and had in operation in the city about 120 miles of street railway, operated over the whole extent of the city, with the exception of a mile or two, by electricity generated by machinery

situated upon real estate owned by it, and extending into every ward and assessment district of the city; that it was also engaged in supplying electric lights to the city and its citizens, and owned said street railway and electric light business under a number of franchises and contracts granted by the common council by various ordinances, and it claimed also to own the franchises and property of the Edison Electric Illuminating Company and of the Badger Illuminating Company, corporations existing under the laws of the state, and that it was operating under their franchises; that an assessment had been made against it by the assessors of the city of Milwaukee for the year 1894, as follows:

| | |
|---|---:|
| Real estate assessed in the various wards where same is.... | $553,790 |
| Personal property, consisting of horses, cars, motors, furniture, snow-plows, sweepers, and other vehicles, assessed in the Third ward at ............. ................. | 200,000 |
| The franchises, together with all tracks, ties, stringers, feed wires, poles, trolley wires, cables, and switches, owned by it in the city of Milwaukee, together with poles, wires, meters, insulators, light conductors, and cables of the properties known as the Badger Illuminating Company, owned by the *Milwaukee Street Railway Company*, assessed in the Third ward at......................... | 2,063,000 |
| Merchants' stock assessed in the Twelfth ward at.......... | 5,000 |
| Personal property assessed in the Second ward at.......... | 2,000 |
| Total .............................. .... ..... ........ | $2,823,790 |
| The franchises of the Badger Illuminating Company....... | 25,000 |
| The franchises of the Edison Electric Illuminating Company | 12,000 |
| Grand total ......................................... | $2,860,790 |

It was alleged that said assessment was an increase over the year 1893 of $1,714,050, caused "by assessing the so-called franchises of the petitioner at a high, exorbitant, and unreasonable value, arbitrarily, and upon no basis other than the mere guess of the assessors;" that in spite of evidence offered by it before the board of review, and its objections, the board refused to change said assessment. It was charged

that the franchises of the petitioner were not taxable by the city of Milwaukee, or that, if taxable, no statute had been passed regulating the valuation of the same, and that there was no method of determining the value of such franchises; that under existing conditions they were of little value; and that the said assessment was illegal and unjust.

The writ commanded the return of the proceedings of the board of review by which it "refused to alter or change the assessments made against the franchises and property of the *Milwaukee Street Railway Company*, as follows: $2,063,000, $25,000, and $12,000." The proceedings of the board of review by which the assessments named in the writ were confirmed were returned, with the testimony taken and statements of counsel and officers of the corporation. It appeared from the testimony that the company had 119 miles of single track within the city limits, extending into every assessment district of the city, twenty-one in number; that there were upon certain of its real estate (a list of which was exhibited, but not embraced in the return) power houses used in running its railway, and that all its lines, substantially, were run by electricity, and that it had ten miles of street railway beyond the city limits; that the power for traction was derived from the power house in the Seventh ward, but it had a power house in the Sixth ward, formerly used for such purposes, and one in the Fourth ward, which had been used until recently.

The circuit court for Dodge county, where the case was heard, gave judgment reversing and setting aside the assessment of $2,063,000 "for franchises, together with tracks, ties, stringers, feed wires, poles, trolley wires, cables, and switches owned by it, together with the poles, wires, meters, insulators, light conductors, and cables of the properties known as the Edison Company and Badger Company, owned by the relator," and also reversing and setting aside the assessment of $12,000 and $25,000 for the franchises of the

two last-named companies, respectively. An appeal was taken from this judgment.

*C. H. Hamilton,* city attorney, for the appellant, contended, *inter alia,* that the franchises of a corporation are property, and as such are liable to taxation. *Sterling G. Co. v. Higby,* 134 Ill. 557; *Atlantic, T. & O. R. Co. v. Comm'rs,* 87 N. C. 129; *Baltimore v. B. & O. R. Co.* 6 Gill, 288; *Cent. Pac. R. Co. v. State Board of Equalization,* 60 Cal. 35; *State Board of Assessors v. Cent. R. Co.* 48 N. J. Law, 146; *Comm. v. Lowell G. L. Co.* 12 Allen, 75; *Comm. v. Hamilton Mfg. Co.* id. 298; *Veazie Bank v. Fenno,* 8 Wall. 533, 547; *Fond du Lac Water Co. v. Fond du Lac,* 82 Wis. 329. The franchises were properly assessed in connection with the property that the franchises made valuable. "All such property of the corporation must be regarded and entered upon the assessment roll, and treated throughout, for all purposes of taxation, as an entirety, and valued as such." *Fond du Lac Water Co. v. Fond du Lac,* 82 Wis. 322, 329, 330. The tracks, poles, wires, etc., of the street railway company are real estate. *People ex rel. D. & F. R. Co. v. Cassity,* 46 N. Y. 46–49; *People ex rel. N. Y. & H. R. Co. v. Comm'rs of Taxes,* 101 id. 322; *People ex rel. N. Y. El. R. Co. v. Comm'rs of Taxes,* 82 id. 459; *Oskaloosa Water Co. v. Board of Equalization,* 84 Iowa, 407; *S. C.* 15 L. R. A. 296, note. The proper method to assess a street railroad is to assess the same as a whole, including as elements of value its franchises, right of way, iron, rails, ties, etc.; but an assessment of its right of way and franchise, as a separate item from its other property, is not invalid. *Street R. Co. v. Morrow,* 87 Tenn. 406. If the legislature has not specifically provided a way in which franchises should be assessed, or fixed any standard of value, that fact does not prevent their being assessed. In the absence of any special measure of value adopted by the legislature, all property must be valued in accordance with the general laws of the state. If a franchise is property, it must

be either real or personal, and as such shall be valued as the law has provided. Real property includes "not only the land itself, but all buildings, fixtures, improvements, *rights* and *privileges*, appertaining thereto." Sec. 1035, R. S. A franchise is an incorporeal hereditament. *Fond du Lac Water Co. v. Fond du Lac*, 82 Wis. 328; *Chapman Valve Mfg. Co. v. Oconto W. Co.* 89 id. 264. As such, it is consequently real estate. 2 Bl. Comm. 37. Independent of statute, franchises are susceptible of valuation on general principles. *State v. C. P. R. Co.* 10 Nev. 64; *Wilmington, C. & A. R. Co. v. Board of Comm'rs*, 72 N. C. 10; *Spring V. W. Works v. Schottler*, 62 Cal. 69, and cases cited; *State Board of Assessors v. Cent. R. Co.* 48 N. J. Law, 146.

For the respondent there was a brief by *Miller, Noyes, Miller & Wahl*, attorneys, and oral argument by *B. K. Miller, Jr.* They argued, among other things, that the track, right of way, and franchises are real estate, and, if taxable at all, must be assessed where situated. Franchises are incorporeal hereditaments, and incorporeal hereditaments are real estate. *Yellow R. Imp. Co. v. Wood Co.* 81 Wis. 560; 2 Washb. Real Prop. (5th ed.), 303; R. S. sec. 1035; *Spensley v. Valentine*, 34 Wis. 154; *Smith v. Ford*, 48 id. 115, 163. Under all the decisions, railway tracks, including ties, poles, wires, and other furniture, are real estate. 25 Am. & Eng. Ency. of Law, 651; Booth, Street R. Law, §§ 210, 271; *People ex rel. D. & F. R. Co. v. Cassity*, 46 N. Y. 46–49. Telephone lines are real estate. *Western U. Tel. Co. v. State*, 9 Baxter, 509; 22 Albany L. J. 21; *New York, O. & W. R. Co. v. W. U. Tel. Co.* 36 Hun, 205. So are electric light wires. *Fechet v. Drake*, 12 Pac. Rep. 694; *Keating I. & M. Co. v. Marshall E. L. & P. Co.* 74 Tex. 605; *Boston S. D. & T. Co. v. B. & M. Tel. Co.* 36 Fed. Rep. 297; *Badger L. Co. v. Marion W. S., E. L. & P. Co.* 48 Kan. 182, 187. A pipe line is real estate. *State v. Berry*, 52 N. J. Law, 308. So is a railroad bridge. *Hill v. L. C.*

*& M. R. Co.* 11 Wis. 223; *Purtell v. Chicago F. & B. Co.* 74 id. 132. So are the foundations, columns, and super-structures of an elevated railway. *People ex rel. N. Y. El. R. Co. v. Comm'rs of Taxes,* 82 N. Y. 459. Contrary to the plain provisions of the statute, this real estate (viz., tracks, right of way, and franchises) was assessed like personal property, at the principal office of the company. It is clear from the decisions in this state that the property of a cor-poration cannot be separated from the franchise, nor can the franchise be separated from the property. *Yellow R. Imp. Co. v. Wood Co.* 81 Wis. 554; *Fond du Lac Water Co. v. Fond du Lac,* 82 id. 322; *Chicago, M. & St. P. R. Co. v. Milwaukee,* 89 id. 506. It is equally clear that the legis-lature has not made a provision for such cases. It is pos-sible that while the franchises, track, and right of way are taxable, no proper machinery has been provided for that purpose. *Western U. Tel. Co. v. Poe,* 61 Fed. Rep. 467, 468.

For the respondent there was also a brief by *Spooner, Sanborn, Kerr & Spooner,* and oral argument by *J. C. Spooner* and *J. B. Kerr.* They argued, among other things, that franchises are not taxable as *property,* within the meaning of sec. 1034, R. S. Although language is used in *Fond du Lac Water Co. v. Fond du Lac,* 82 Wis. 322, 332, to the effect that franchises are property subject to taxation, neverthe-less no method has been provided in this state for their assess-ment; and, under the authorities, while franchises may be made subjects of taxation by appropriate legislation, yet they are properly taxed in like manner with privileges and occupations, and, as their measure of worth is found in their earning power, they properly form a separate class by them-selves. Ch. 48, R. S., under which the assessment in ques-tion is made, relates solely to the assessment of taxes upon property according to the constitutional rule of uniformity, and provides a method of preserving this uniformity as to both real and personal property. The authorities, however,

hold almost universally that taxes upon franchises do not fall within the constitutional limitation of uniformity of taxation common to most of the states. *Society for Savings v. Coite,* 6 Wall. 594; *Provident Institution v. Mass.* id. 611; *Railroad Co. v. Peniston,* 18 id. 5–37; *Home Ins. Co. v. New York,* 134 U. S. 595; *California v. C. P. R. Co.* 127 id. 1, 41; *Southern C. O. Co. v. Wemple,* 44 Fed. Rep. 24; *Comm. v. Lancaster S. Bank,* 123 Mass. 493; *Philadelphia C. for Ins. v. Comm.* 98 Pa. St. 48. Franchises are grants from the state and merely confer personal rights. Although by the terms of the grants they are made assignable and transferable, an examination of the principles which control the exercise of that authority shows that there can be no actual transfer of them. A sale and transfer can amount to nothing more than the appointment of persons to take and enjoy a franchise similar to the one conferred upon the corporation in the first instance, and such persons take by virtue of a new legislative grant. 2 Morawetz, Priv. Corp. § 924; *State ex rel. Att'y Gen. v. Sherman,* 22 Ohio St. 411; 2 Rorer, Railroads, 882. The value of a franchise depends solely upon the extent of its exercise, and from the principles which govern its sale and transfer it is difficult to see how it can be said to have value in the sense the word is used in the statutes relating to taxation. Sec. 1052, R. S.; *Fox v. Phelps,* 17 Wend. 399; *Smith v. Metropolitan G. L. Co.* 12 How. Pr. 187. Throughout the country, whenever it has been deemed expedient to collect revenue from this source, it has been the invariable custom, so far as we have been able to determine, to levy a distinctive *franchise* tax. These franchise taxes differ widely in the various states, no less than thirteen systems being in operation. See Taxation of Corporations, 21 Pol. Sci. Quar. 269, 438, 636. It is believed that all these thirteen systems are in effect excises, and based upon the power to demand payment for privileges conferred. See, also, Welty, Assessments, § 125; 1 Desty, Taxation, 319;

*State v. Metz*, 31 N. J. Law, 378; *State v. P., W. & B. R. Co.* 24 Am. Rep. 511, 45 Md. 361; *De Witt v. Hays*, 2 Cal. 468; *Boreel v. New York*, 2 Sandf. 552; *Smith v. New York*, 68 N. Y. 552; *Passaic W. Co. v. Paterson*, 56 N. J. Law, 471.

The following opinion was filed June 20, 1895:

PINNEY, J.  The assessments against the *Milwaukee Street Railway Company* for the franchises of the Badger Illuminating Company and for the franchises of the Edison Electric Illuminating Company cannot be sustained; and so, too, as to any property belonging to either of those companies. The franchises of the two last-named companies, and any property they may own, belong in law to them, respectively, and are proper matter of assessment against such companies only. Their franchises of existence are inalienable, and their other franchises and property they had no power to make over, by deed or transfer, to the street railway company, so as to disable them from performing the duties they owe, respectively, to the public as a consideration for the franchises granted to them.

It is contended on behalf of the railway company that its franchises are not liable to assessment and taxation, for the reason that no provision or rule has been enacted for their valuation; that its franchises and tracks, ties, stringers, poles, wires, etc., are real estate, and, as such, liable to assessment only in the ward or assessment district where situated; that it is not competent, in the present condition of the statutes and the city charter of Milwaukee, to assess the real estate on which its power houses are situated in the Fourth, Sixth, and Seventh wards or assessment districts, in the Third ward or district where the company has its principal office, and into and through which its road in part extends, with its franchises, tracks, etc., as an entirety; and that, if competent to assess its franchises and all property necessary to the operation of its road as an entirety, the assessment in question

is void for the reason that such property has not been assessed as an entirety, the power houses and premises on which they are situated having been assessed separately from the franchises and other property in the wards or districts where situated. The questions involved are important, in view of the great and constantly increasing amount of capital invested and used in connection with such franchises by water, light, and street railway companies,— corporations of a *quasi* public character,— the franchises and property of which are charged, by reason of their legal connection, with important uses in favor of the public.

It was not denied — indeed, it was rightly conceded — that the franchises of the street railway company are property. It is believed that there is no authority to the contrary, nor is it seriously questioned but that the franchises of the company, and its property of whatever kind, necessary or essential to their exercise and use to carry out the purposes for which it was created, are in law an entirety, and indivisible, and not subject to severance by sale for taxes under the general operation of the tax laws or other legal process.

1. It is declared by statutes in force ever since the state was organized that "taxes shall be levied upon all property in this state, except such as is exempted therefrom." R. S. 1878, sec. 1034; R. S. 1858, ch. 18, sec. 1; R. S. 1849, ch. 15, sec. 1. And in each of these revisions there is found a section with several subdivisions exempting several kinds of property from taxation; but there never has been any statute in force exempting franchises of any *quasi* public corporation from taxation, except in the single instance of railroad companies. It has been provided ever since 1868 (Laws of 1868, ch. 130, sec. 2), when railroads operated by horse power here began to come in use, down to the passage of ch. 285, Laws of 1889, that the general exemption of railroad property contained in subd. 14, sec. 1038, R. S. 1878, should not

apply " to any railroad that now is or shall be operated by horse power, whether now or hereafter constructed, in any city or village." After electric railways came into use, doubtless in view of the great amount of capital likely to be invested in such enterprises, and for greater certainty that such property should not escape taxation, ch. 285, Laws of 1889, was enacted, amending subd. 14 of said sec. 1038, and for that and no other purpose, and declaring that the exemption of " the track, right of way," etc., " and all other property used in operating any railroad in this state belonging to any railroad company," from taxation, " shall not apply to any railroad that now is or shall be operated by horse, *cable or electrical* power, whether now or hereafter constructed, in any city or village." The sole object of this enactment was to incorporate in the statute the three words above italicized. As the franchises of this corporation, whether of existence or for the operation of its track, are beyond dispute the property of the corporation, it would seem clear that they are liable to assessment and taxation.

Franchises are classed as incorporeal hereditaments, though, as stated by Chancellor Kent (3 Kent, Comm. 459), " with some impropriety, as they have no inheritable quality." They are defined in *Society for Savings v. Coite*, 6 Wall. 594, 606, as " legal estates vested in the corporation as soon as it is *in esse*," and are as varied as the purposes for which corporations are created. In *People ex rel. Panama R. Co. v. Commissioners of Taxes*, 104 N. Y. 240, 247, it is held that they are not real property, and are not, " within the tax laws, to be reckoned as a part of the realty;" and in this view, although the authorities are not fully agreed on the subject, we entirely concur. The method of taxation in this state is upon the valuation of property taxed, and the statute does not provide for a certain, specific tax on franchises, like an excise rate, and known as a franchise tax, under methods of taxation in use in many of the states.

The State ex rel. Milwaukee Street R. Co. vs. Anderson.

"In some states," says Mr. Cooley in his work on Taxation (page 383), "all taxation, as far as possible, is brought to an *ad valorem* standard. Franchises are property, and in such states may be taxed by valuation, being estimated for the purpose either separately or as a part of the aggregate corporate property." *State Board of Assessors v. Central R. Co.* 48 N. J. Law, 283, 288, 347. They have a value which can be estimated, and this is the proper duty of the assessor or the board of review. In *State Railroad Tax Cases*, 92 U. S. 603, it is laid down: "That the franchise, capital stock, business and profits of all corporations are liable to taxation in the place where they do business, and by the state which creates them, admits of no dispute at this day. 'Nothing can be more certain in legal decisions,' says this court in *Society for Savings v. Coite*, 6 Wall. 607, 'than that the privileges and franchises of a private corporation . . . may be taxed by a state for the support of the state government.' *State Freight Tax Case*, 15 Wall. 232; *State Tax on Railway Gross Receipts*, 15 Wall. 284." In *Wilmington Railroad v. Reid*, 13 Wall. 268, the court says that "nothing is better settled than that the franchise of a private corporation — which in its application to a railroad is the privilege of running it and taking fare and freight — is property, and of the most valuable kind." And in *Morgan v. Louisiana*, 93 U. S. 223, it is said that they "are rights or privileges which are essential to the operations of the corporation, and without which its road and works would be of little value. . . . They are positive rights or privileges, without the possession of which the road of the company could not be successfully worked. Immunity from taxation is not one of them." *Chesapeake & O. R. Co. v. Miller*, 114 U. S. 186; *Sterling Gas Co. v. Higby*, 134 Ill. 557; *Spring Valley Water Works v. Schottler*, 62 Cal. 110; *Central Pac. R. Co. v. State Board of Equalization*, 60 Cal. 35; *Veazie Bank v. Fenno*, 8 Wall. 547.

The State ex rel. Milwaukee Street R. Co. vs. Anderson.

We have the general and paramount provision making franchises taxable. Legislative direction as to the manner of valuation is a convenience, rather than an absolute necessity, and the lack of such direction does not argue the absence or suspension of the general power to tax. The value of franchises, especially in connection with the property reasonably necessary for their exercise and use and which, without them would be of little or no practical value, can be estimated as well as the value of other subjects of taxation, though perhaps not as readily or with the same degree of certainty. The cardinal requirement is that, as property, they shall be taxed. All else is matter of method and detail. The assessors, board of review, and other officers would seem to be competent, under their general powers under the law, to fix their value and extend the tax. The legislature, by ch. 285, Laws of 1889, *ex industria* guarded against any possible implication of exemption of any of the property of street railway corporations. Besides, it is a well-settled principle that an exemption from taxation, to be valid, must be express and clear, beyond reasonable doubt. Cooley, Taxation, 101; *Tucker v. Ferguson*, 22 Wall. 575; *West Wisconsin R. Co. v. Board of Supervisors*, 93 U. S. 598; *People ex rel. Twenty-third St. R. Co. v. Commissioners of Taxes*, 95 N. Y. 554. The suspension or surrender of the power of taxation cannot be implied. *Weston v. Shawano Co.* 44 Wis. 256. We think it cannot be presumed from the mere failure to indicate detailed directions for valuing and taxing property, however useful or convenient, as against an explicit mandate that it shall be taxed, and when general means and instrumentalities adequate for that purpose exist.

2. At common law, franchises, being incorporeal hereditaments, were not subject to seizure and sale on execution; and it has repeatedly been held that the franchises and corporate rights of a *quasi* public company, and the property vested in it necessary to their use and enjoyment and the

accomplishment of the purpose for which the company is created, constitute an entirety, and are not subject to be sold and granted or transferred by any adverse process against it, and that the sale of such property in separate parcels is not permissible, as the result would be to utterly destroy the value of the property of the company for the purpose intended, by severing from the franchises property essential to the useful existence of the company. *Gue v. Tide Water C. Co.* 24 How. 263. The value of the property of the company consists in the franchises connected with the tangible property, without which the latter would be of little or no value. *Hammock v. Loan & Trust Co.* 105 U. S. 90; *East Ala. R. Co. v. Doe*, 114 U. S. 340, 353. The entire property of the corporation, thus considered, is to be re- garded and treated as indivisible for the purpose of sale under adverse process, and to permit it to be sold otherwise would defeat the uses impressed on it for public purposes, and which constituted the consideration for the grant of its franchises.

In *Yellow River Imp. Co. v. Wood Co.* 81 Wis. 560, this subject was fully considered and the authorities collated, with the result in substance as stated; and it was there held that the "principles mentioned apply with equal force to tax proceedings," and that "the rights, privileges, and plant essential to the continued business and purposes of the cor- poration are not to be severed, broken up, or destroyed, without express legislative authority, but, on the contrary, are to be preserved in their entirety, and for that purpose are deemed segregated from any other property owned by the corporation." *Street Railroad Co. v. Morrow*, 87 Tenn. 413; *Detroit v. Detroit City R. Co.* 76 Mich. 427. In *Fond du Lac Water Co. v. Fond du Lac*, 82 Wis. 322, the same principles were applied to the taxation of the property of a water company, in which it was held that all such property of a corporation, within this rule, must be regarded and en-

tered upon the assessment roll and treated throughout for all purposes of taxation as an entirety; that property not so annexed and necessary to the exercise and enjoyment of the franchises of the corporation might properly be treated and dealt with separately, as in the case of the property of natural persons. In that case the only subject of taxation entered upon the assessment roll was simply certain specified lots, without reference to the works of the company, its mains, pipes, and hydrants, or its corporate rights and franchises, either in detail or as an entirety; and it was held that the assessment must be deemed to be against the lots only, and that the defect could not be remedied by showing in that action that the assessor and board of review in the valuation of the lots included therein the value of the entirety with the franchises of the company. The question of the taxability of the franchises of that company was clearly involved in that case, and expressly affirmed. The principle of these cases was again affirmed in *Chicago, M. & St. P. R. Co. v. Milwaukee*, 89 Wis. 506, where it was held that the general provisions of the statute concerning the levying and collecting of taxes are to be construed and held as subordinate to the rule against the severance and segregation of property of a *quasi* public corporation, essential to the continued exercise of its corporate franchises, and that such a result could not be effected without express legislative authority, mere general language in statutes not being held to authorize such a result. We think these cases were rightly decided, and see no reason for departing from the propositions there laid down.

3. Regarding, then, the franchises of the company and the property necessary for their use and exercise and to accomplish the *quasi* public purposes for which the corporation was created, as an entirety, and its franchises as personal estate for the purposes of taxation, the proper place of assessment of the property as an entirety was the district

in which it had its "principal office, or place of business." R. S. secs. 1040, 1041; *Milwaukee Steamship Co. v. Milwaukee*, 83 Wis. 595.

4. Various methods of taxation of the property of such corporations have been adopted in the different states, depending upon local statutes and systems of taxation, and various views have prevailed as to the legal nature and character of such property. In New York, where the construction and operation of street railways in the public streets by authority from the city government is regarded as a new burden imposed on the abutting lots or property, the right cannot be acquired except by purchase or the exercise of eminent domain, and upon compensation made for it. Street railways are there regarded as real estate. *People ex rel. D. & F. R. Co. v. Cassity*, 46 N. Y. 46, 49; *Craig v. R. C. & B. R. Co.* 39 N. Y. 404; *Story v. N. Y. E. R. Co.* 90 N. Y. 122. In this state such use of the public streets is held not to be a new burden on the property of the lot owner, and may be granted by the public authorities without compensation. *Hobart v. Milwaukee C. R. Co.* 27 Wis. 194. And the right to use the streets for such purposes is considered as a franchise granted on behalf of the state by the local authorities. *State ex rel. Att'y Gen. v. Madison St. R. Co.* 72 Wis. 619. We think, therefore, that the tangible property, such as cars, rails, poles, wires, etc., used in connection with the franchises of the company, as well as the franchises, may be properly regarded for the purpose of taxation as personalty; and, as such, that it is subject to assessment in the assessment district where the company has its principal office or place of business. In *State ex rel. St. P. C. R. Co. v. District Court*, 31 Minn. 354, 358, the portion of a track of the city railway in a public street was held not to be realty within the meaning of the laws authorizing assessments for paving. And in Booth on Street Railway Law, sec. 272, it is said that, "to arrive at the valuation of a street railway

for the purposes of taxation, the proper method is to assess it as a whole, including as items of value its franchises, right of way, rails, sleepers, ties, and other fixtures," and in *Detroit v. Detroit C. R. Co.* 76 Mich. 421, it was held that the right to use street railway tracks is inseparable from the franchises; and, not being taxable as land, it should properly be taxable as an entirety in one place, so far as within one city. *Street Railroad Co. v. Morrow*, 87 Tenn. 406.

For these reasons, we do not think the property upon which the assessment complained of was made can be regarded as within the statute defining "real property," "real estate," and "land," for the purposes of taxation. It certainly is not land itself, nor is it either "buildings, fixtures, improvements, rights, or privileges appertaining thereto." R. S. sec. 1035. It does not belong to the owner of the soil or to the city representing the public in the easement over it for the purpose of travel, but it pertains to the franchise of the company, and belongs to the company. The utter impracticability, not to say impossibility, of treating it as real estate for the purposes of taxation, is illustrated, not only from the results that might follow tax sales, but in attempting to assess it as such under the provision that "all real property not expressly exempt from taxation shall be entered upon the assessment roll in the assessment district where it lies" (R. S. sec. 1039), and is well illustrated by the present case, where the property claimed to be real estate has a physical location in twenty-one assessment districts. How could it be entered on the rolls by lots and blocks, or by reference to plat or deed, or how otherwise, under secs. 1045 and 1046? It is part on and part in the soil, and part in the air. How are the twenty-one assessors to assess and value the tracks, ties, poles, trolley wires, etc., with certainty and in an intelligible manner in so many parcels? And are the twenty-one assessments to be followed by as many separate taxes and tax sales in case of

nonpayment? It seems to us entirely clear that this prop-
erty cannot be regarded as real estate for the purposes of
taxation, and that it is not the "land" and "real property"
described in these sections for assessment and taxation; and,
as already stated, it seems perfectly plain from the statute
(secs. 1034, 1038, R. S.; ch. 285, Laws of 1889) that this
property is required by law to be assessed and taxed.

As held in *People ex rel. Twenty-third St. R. Co. v. Com-
missioners of Taxes,* 95 N. Y. 554, 558, the general purpose
of the statutes relating to assessment and taxation is to se-
cure an assessment of all property, real and personal, at its
actual value; and they are to be construed and enforced
with this purpose in view. In view of the use made of the
specific lots upon which the power houses are situated, and
upon a fair construction of the statute, and with a view to
carry out its evident meaning, we hold that such real estate,
thus devoted to such uses, is not the real property required
by sec. 1039 to be "entered upon the assessment roll in the
assessment district where it lies;" it having acquired a pe-
culiar character in the law by reason of having become a
part of the entirety of a property subject only to assess-
ment and taxation as an entirety in the assessment district
where the corporation owning it has its principal office and
place of business. The argument was made that as the real
property on which the power houses were situated, by the
terms of the statute, could not be assessed in the Third
ward or assessment district, so as to enable an assessment of
the property of the company in its entirety to be made in
that district, therefore neither its franchises nor the material
and tangible property necessary to their use could be taxed
at all. We cannot see that, by a proper construction of the
various provisions of the statutes cited, any such conclusion
would follow. Certainly, no such result can be fairly said
to have been intended. On the contrary, we think it is
reasonably clear, in view of the rule requiring such property

to be assessed and taxed as an entirety, that all real property constituting a part thereof by reason of the premises becomes taxable as a part of such entirety and in the assessment district where the company has its principal office or place of business. This view derives added force from ch. 285, Laws of 1889, under which it was clearly intended that all the property of such companies should be taxed. There is an appropriate officer to assess and value it, and a proper board to review the assessment, and all the appropriate agencies to carry out and collect the tax.

5. It is apparent from the record that in making this assessment the rule laid down in the case of *Fond du Lac Water Co. v. Fond du Lac*, 82 Wis. 322, was not pursued. The present case presented difficulties and embarrassments which did not exist in the case cited, where the city constituted a single assessment district. The result of the course pursued is that the lots and power house or houses, or such as is or are reasonably necessary to the use and exercise of the franchises of the railway company, have not been assessed as they should have been, with and as a part of the entirety, in compliance with the rule established in this state on that subject; and the assessment was therefore void and was rightly set aside.

6. The board of review which might have corrected any defect in the assessment in question is not a permanent body, but has been dissolved and has lost all control over the assessment in question; and, as the duty of the court on *certiorari* is limited to either an affirmance or reversal of the assessment, it follows that the judgment of the circuit court setting aside the assessment must be affirmed.

7. The objection that the provision that the rule of taxation shall be uniform (sec. 1, art. VIII, Const.) was violated by the provisions of the city charter in respect to the method of electing city assessors by the mayor and common council upon the recommendation of the tax commissioner, instead

of by a vote of the electors, and making such tax commissioner, appointed by the mayor and confirmed by the common council, a member of the board of review with the assessor, mayor, and city clerk (City Charter — Laws of 1874, ch. 184 — subch. 18, secs. 2, 6, 12), is not well taken. There can be no doubt that the assessors and tax commissioner were legally appointed, and there was no constitutional objection to the creation of the office of tax commissioner of the city of Milwaukee, and to making him a member of the board of review. The constitutional rule is not violated by diversity of methods of electing or appointing assessors in the several cities, or in the constitution of their respective boards of review. The uniform rule is complied with in this respect if property is assessed by assessors properly elected or appointed, and the assessment is reviewed by a board of review elected or appointed in conformity with sec. 9, art. XIII, Const. R. S. sec. 1030. These provisions of the charter in question were a *general* law amending the former charter, and were a grant of corporate power to the city, and not a *special* act for the assessment or collection of taxes, within the meaning of the sixth clause of sec. 31, art. IV of the constitution. *State ex rel. Hamilton v. Krez,* 88 Wis. 137; *Clark v. Janesville,* 10 Wis. 136; *Warner v. Knox,* 50 Wis. 431; *Cathcart v. Comstock,* 56 Wis. 613.

*By the Court.*— The judgment of the circuit court is affirmed.

A motion for a rehearing was denied September 26, 1895.