Town of Washburn, Appellant, vs. Washburn Water-
works Company, Respondent.

*February 2—February 23, 1904.*

*Appeal from justices' courts: Jurisdictional defects: Appeal and error: Record: Bill of exceptions: Waterworks: Franchise: Contracts: Construction: "Leasehold period:" "Franchise period:" "During such term:" "First ten years:" "Tax assessed:" Judgments: Taxation: Public service corporations: Personal property: Findings: Construction.*

1. On appeal from a circuit court judgment in an action appealed from justice court and tried *de novo*, whether the circuit court was without jurisdiction of the subject-matter because the jus-

tice did not obtain it is to be solved from the record, which does not include the justice's docket or the minutes of his proceedings unless the same are made a part thereof by a bill of exceptions.

2. A franchise was granted by a municipality to construct and operate a waterworks within its boundaries, to furnish water for public and private use for a period of twenty-five years from its date, and to use the public places to that end, the municipality leasing of the grantee fire hydrants for said term and agreeing to pay a rental of $4,000 per year and the municipal taxes assessed on the property for the first ten years, and to pay $4,000 per year thereafter during such term, payable in two installments of $2,000 each on the 1st days of January and July, earning capacity to commence when, upon the works being tested, they were found to comply with the franchise and contract. *Held:*

(a) The leasehold period and the franchise period are co-extensive, both commencing with the date of the franchise and ending twenty-five years thereafter.

(b) The words "during such term" refer to the period of twenty-five years, rent, however, to commence when water service commences.

(c) The words "first ten years" point to the first period of ten years in a period of twenty-five years; and there being no period of twenty-five years except the one commencing with the life of the franchise, the ten-year period commenced at the same time.

(d) The words "tax assessed" refer to all the proceedings requisite to charge the property or the owner thereof with the payment of taxes, culminating not earlier than when the taxes might be paid.

(e) The words "for the first ten years" were used in the sense of during the ten years subsequent to the date of the franchise.

(f) The agreement being to pay the taxes assessed during a period of ten years subsequent to the date of the franchise, it is immaterial whether taxes were assessed during the first of such years, as regards what were the last taxes to be paid.

3. To support a judgment under sec. 1105, Stats. 1898, it should appear that all the issues specified in sec. 1102 were found for the plaintiff, or that defendant failed to appear and answer relevant questions.

4. The franchise, land and chattels of a public service corporation constitute one indivisible thing for the purposes of taxation. The franchise is personal property, and all things of a proprie-

tary nature connected therewith, whether land or movables, partake of its character, and the value of that which is created by the combination of tangible and intangible things forms the legitimate basis for taxation. That is so, generally, by settled judicial policy, and so by statute as to waterworks property.

5. A finding that when the taxes were assessed defendant owned property of the character above mentioned is equivalent to a finding that it owned property of some description sufficient to pay the taxes in question or some part thereof, though such property be not subject to seizure upon execution or tax warrant.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Bayfield county: JOHN K. PARISH, Circuit Judge. *Reversed.*

Proceedings for the judicial enforcement of a personal property tax. May 6, 1889, the town of *Washburn,* in Bayfield county, contracted with Weston Lewis and J. S. Maxcy for the construction, maintenance and operation of a system of waterworks in the village of Washburn, in said town, for the purpose of supplying water for public and domestic purposes in such village, granting to them the use of the streets and other public places therein so far as necessary thereto, the town binding itself to pay for the public water service, "an annual rental of $4,000" and "any town or municipal tax which may be assessed against the grantees or their assigns for the first ten years, and an annual rental of $4,000 after the expiration of said ten years," during the life of the contract, that being twenty-five years from the date thereof. The town possessed authority to make the contract. It was assignable on the part of Lewis and Maxcy and was by them assigned soon after its date to defendant. The waterworks system was completed, put in operation, and commenced earning the stipulated rental on October 15, 1889. Thereafter, so far as appears, except as herein stated, the defendant and the town fully performed their respective obligations under such contract. In 1899, in due form so far as appears,

there was assessed upon the waterworks property, for state, county and town purposes, taxes to the amount of $2,294, the same being duly extended on the town tax roll. Due demand was made upon the defendant to pay such taxes, which was refused. Thereupon the treasurer made affidavit as provided in sec. 1100, Stats. 1898, filing it with a justice of the peace of said town of Washburn, who then duly issued a summons, commanding the defendant to appear forthwith to answer under oath and show cause why he should not pay such taxes. Such proceedings were thereafter had in the matter that a trial occurred in respect thereto in the circuit court for Bayfield county, upon appeal from the judgment rendered before the justice. The facts aforesaid appear by the affidavit upon which the summons was issued and the findings made in the circuit court. Such findings are further to this effect: In the year 1899 there was levied and carried out on the tax roll of the town of *Washburn,* against the *Washburn Waterworks Company* upon its franchise, plant, mains, hydrants, real estate and personal property used in the operation of said works, and in its entirety, the sum of $2,294 for taxes, and $45.88 collector's fees, being in all $2,339.88. The property so taxed was owned by defendant and liable to taxation at the time the assessment of such taxes was made. The total taxes carried out on the tax roll of the town of *Washburn* for the year 1899, were state taxes, $8,753.20, county taxes, $18,287.56, town taxes, $61,453.13; total, $88,443.89.

Upon such facts the court decided as matters of law that the town of *Washburn* was liable to pay the taxes assessed upon defendant's property in 1899, and that defendant was entitled to a dismissal of the action with costs. Judgment was rendered accordingly.

For the appellant there was a brief by *W. M. Tomkins* and *John Walsh,* and oral argument by *Mr. Tomkins.*

For the respondent there was a brief by *Lamoreux & Shea,* and oral argument by *W. F. Shea.*

MARSHALL, J. This case comes up on the record of the trial in the circuit court, consisting, at most, of the affidavit for the issuance of the summons, made the complaint by sec. 1101, Stats. 1898, the summons and return of service, the findings of fact and conclusions of law filed in the circuit court, and the judgment. There is no bill of exceptions.

Counsel for respondent contend that, irrespective of any merit in the propositions presented by appellant, the judgment should be affirmed because the justice before whom the action was commenced did not obtain jurisdiction of the subject-matter thereof. Most of the reasons assigned therefor are based on proceedings before the justice, shown by his docket entries, no part of which, by proper proceedings, was incorporated into the record in the circuit court and upon this appeal. Had counsel desired to raise for consideration points not so appearing without a bill of exceptions, they should have presented the facts in respect thereto to the circuit court for consideration, taken rulings thereon and exceptions to such rulings, or in some way gotten such matters before the court, and embodied the same in a bill of exceptions. That course not having been pursued, we can look only to the record, strictly so called, consisting of the papers to which we have referred. *Sellers v. Lampman,* 63 Wis. 257, 23 N. W. 131; *Mathews v. Ripley,* 101 Wis. 100, 77 N. W. 718; *Crate v. Petipher,* 112 Wis. 252, 87 N. W. 1104. No defect is claimed which in any view of the matter is disclosed thereby except in the service of the summons and the proof thereof, and such defects, if any there be, must be regarded as cured by the appeal to the circuit court. *Barnum v. Fitzpatrick,* 11 Wis. 81; *Lowe v. Stringham,* 14 Wis. 222. In *Mathews*

*v. Ripley, supra,* it was distinctly held that upon an appeal to this court from a judgment rendered in the circuit court on appeal from a justice's court, where want of jurisdiction of the subject-matter by the justice is relied on to defeat the action, and the alleged facts in that regard do not appear by the pleadings, verdict or findings, and judgment rendered thereon, they cannot be considered unless made a part of the record by a bill of exceptions. Attention was there called to the fact that, in previous cases where the jurisdiction of the justice of the subject-matter was challenged upon appeal with effect, there was such a bill, showing the facts relied upon. *Cooban v. Bryant,* 36 Wis. 605; *Henckel v. Wheeler & W. Mfg. Co.* 51 Wis. 363, 7 N. W. 780.

Appellant's counsel contend that error was committed in deciding, in effect, that the ten-year period, during which all town or municipal taxes assessed on the waterworks property were agreed to be paid by appellant, includes the assessment in question. The contract with the city is dated May 6, 1889. It provides, among other things, as follows: .

(1) "The rights and privileges herein granted to continue for a term or period of twenty-five years from and after the passage of this ordinance."

(2) "The said waterworks shall be . . . completed to successful operation on or before the 15th day of October, 1889."

(3) "Upon the completion of said works they shall be tested, . . . and if successful the rental for fire service herein stipulated shall begin."

(4) "The town of *Washburn* hereby agrees to and does rent from the said grantees or assigns for the term of twenty-five years . . . fifty double discharge frost proof fire hydrants."

(5) "The town of *Washburn* . . . hereby agrees and promises to pay an annual rental of $4,000 together with any town or municipal tax which may be assessed against the grantees or assigns for the first ten years, and an annual rental of $4,000 after the expiration of the said ten years

. . . in semi-annual instalments of $2,000 on the first day of January and July of each year during such term."

(6) "A sufficient tax shall be levied and collected annually upon all taxable property in the town subject by law to such taxation, to meet the payments under this law as they may respectively mature."

That such language is open to judicial construction at many points seems clear, and especially on the subject of whether the words "first ten years" refer to the period of ten years commencing with the acceptance of the waterworks by the town, or the period of like length commencing with the date of the franchise. In solving the ambiguity in that regard we must give due weight to the circumstance that the provision in question is in the nature of a favor to respondent not granted to taxpayers generally. While it cannot be deemed an exemption from taxation, respondent and its grantors were obviously thereby relieved for a long period of time from all danger of being burdened by an increase in the rate of taxation—a very valuable privilege. Upon familiar principles, both because of such advantage not granted to taxpayers generally and because independently of that element the clause is in the nature of a grant from the people in their sovereign capacity notwithstanding the contract feature, reasonable doubts as to its meaning should be resolved in favor of the public, represented by appellant. *State ex rel. Milwaukee St. R. Co. v. Anderson,* 90 Wis. 550, 562, 63 N. W. 746; *Yates v. Milwaukee,* 92 Wis. 352, 66 N. W. 248; *State ex rel. Bell v. Harshaw,* 76 Wis. 230, 45 N. W. 308; Parsons, Contracts (9th ed.) 507.

The word "rental" in subd. 3, must mean the same as that term in subd. 5. Then the rental which was to begin as specified in the former, is the rental to be paid as specified in the latter. That it has reference only to the $4,000 per year, not to the taxes to be paid by appellant, is strongly if not conclusively indicated from the language, in close con-

nection with the specification of the amount of the rental,
of the promise of payment thereof in two insalments of
$2,000 each.   It is pretty clear that the purpose of the con-
tract was not to obligate the town to pay the rental for the
full period of twenty-five years, since otherwise the earning
period would date from the inception of the contract or
would be extended beyond the life of the franchise.   The
first would be unreasonable, the last absurd; so both should
be rejected, at least if some reasonable meaning can be dis-
covered.   We would feel bound to reject the latter because
of its absurdity, and the former since the contract expressly
provides that the earning period shall date from the accept-
ance of the works.   Necessarily we must say, then, that it
was contemplated that such period would be for a less term
than twenty-five years; yet the obvious fact remains that the
first ten years means a period of ten years carved out of a
full period of twenty-five years.   It will be seen by subd. 1,
that the life of the franchise is twenty-five years, and by
subd. 4 that appellant became the lessee of the water hydrants
for the full term of twenty-five years.   The latter period
must have been intended to be synonymous with the fran-
chise period and to commence on the 6th day of May, 1889.
True, that involves the idea of a leasehold interest in the
hydrants before they were in place; but the meaning as indi-
cated is so unmistakable that we cannot well escape adopt-
ing it.   The only "first ten years" of the period of twenty-
five years mentioned in the contract, then, is the period of
that length commencing with the life of the franchise and
the town's lease of the hydrants.   True, the first ten years
as to the rental of $4,000 per year is tied to the first ten
years as to taxes, but it is followed by the provision for the
payment of the rental of $4,000 per year after the expira-
tion of the first ten years "during such term," plainly, as it
seems, referring to the balance of the term of twenty-five
years for which the hydrants were leased.   That indicates,

as before stated, the incurring of an obligation to pay rental upon the lease of the hydrants before the waterworks were in service, standing alone; but it is modified by the provision as to when the earning capacity of the works shall begin, to wit, when the same shall have been tested and found satisfactory under the contract. The necessary result of this reasoning is that the first ten years in question expired May 6, 1899. As the town did not agree to pay ten years' taxes, it cannot be legitimately charged with the taxes in question unless the same were assessed for the last year of such ten-year period within the meaning of the contract.

It is considered that, in the term "tax which may be assessed," the word "assessed" is used in the sense of the levy of taxes rather than the mere determination to raise money by taxation; the proceedings requisite to charge property or the owners thereof with the payment of taxes, not the assessment of property for taxation. The term "assess taxes" is commonly used as synonymous with the levying of taxes, as descriptive of the steps in their entirety necessary to charge specific property with taxes, or the owners with the payment thereof. There is no such thing as the assessment of a tax in the mere sense of the assessment of property for taxation. *Chicago & N. W. R. Co. v. Forest Co.* 95 Wis. 80, 70 N. W. 77. In the contract in question the term "assessed" plainly refers to the actual creation of an obligation upon the owner of the waterworks property to pay taxes, the actual extension upon the tax roll of the tax apportioned its property, indicating the proportion of the public burdens to be paid on account thereof for any particular year, and steps essential to render the same payable. That was not done, as to the tax in question, till the latter part of 1899, or long after the first ten years of the franchise period of twenty-five years had expired. We take it that the language "for the first ten years" means in the first ten years; not that the parties had in mind the splitting up of any year.

Counsel for respondent suggest that a solution of the foregoing question requires a decision of whether the waterworks property was first taxed in 1889 or 1890. Not so, as it seems to us. It is immaterial when the property was first taxed. The town of Washburn did not agree to pay ten years' taxes upon the property assessed, but did agree to pay the taxes assessed upon the property, or to the owner thereof because of such ownership, for or in the first ten years after May 6, 1889. If no taxes were assessed or levied upon the property for the first of such ten years, that gave respondent no legal right to charge appellant with taxes assessed upon the property in the year succeeding the expiration of such period.

But it is said that, irrespective of whether the taxes in question fall within or without the ten-year period mentioned in the contract, the judgment of dismissal is right because the findings made by the trial court are not sufficient to warrant a judgment in favor of appellant, since they do not pass favorably to it upon each of the questions to be answered under secs. 1102, 1105, Stats. 1898. True, the action could not legally deal with any but personal property taxes; and also true, it was essential to the legitimate rendition of a judgment in favor of appellant that respondent should either refuse to appear upon the trial and answer relevant questions, or that upon evidence warranting the same there should be a finding in appellant's favor upon the three questions specified in sec. 1102, Id., such questions being as follows:

(1) Did the defendant have any personal property liable to taxation at the time the assessment was made?

(2) Has he money or property, real or personal, of any description, sufficient to pay such tax or any part thereof?

(3) Is he justly liable for the payment of such tax or any part thereof?

Counsel express doubt as to whether an affirmative answer

to the first question can be read out of the findings, insists that the second was not answered at all, and that the third was answered in favor of respondent. Such doubt springs from uncertainty, as counsel views the matter, as to whether lands, water mains, franchises and other property of a water company, in use and for use in performing the duties devolving upon it, are personal property for the purposes of taxation. That is not an open question in this state. *Yellow River Imp. Co. v. Wood Co.* 81 Wis. 554, 51 N. W. 1004; *Fond du Lac W. Co. v. Fond du Lac,* 82 Wis. 322, 52 N. W. 439; *Monroe W. W. Co. v. Monroe,* 110 Wis. 11, 85 N. W. 685; *State ex rel. Milwaukee St. R. Co. v. Anderson,* 90 Wis. 550, 63 N. W. 746. An examination of those and other cases decided here, that might be referred to, shows that it has been as firmly established as anything can be by judicial determinations, that all the property of a public service corporation, such as appellant, street and other railway companies, and public lighting companies, whether real, personal or mixed, in the ordinary sense of those terms, including franchises other than the mere right to be a corporation, is one entire indivisible thing; that all the parts partake of the nature of the franchise from which springs the public duty, and as that is deemed to be personalty, all should be regarded as such. In that view it would be the height of absurdity to consider value and impose a tax upon one part of such entire thing separate from the rest. There can be no separation without destruction. Therefore the separate value of the parts in the aggregate would not necessarily approximate to or be any legitimate measure of the value of all the parts, viewed as one complete machine, so to speak. The franchise by itself would be valueless. The plant in its parts as realty and personalty according to the character thereof, irrespective of the combination of all into one entire thing, might be of little value, and probably would be, as compared to what they would represent in the new form,

produced by the union of many parts into one. The great
value is produced by the combination of parts into one com-
plete working machine, adapted in a high degree to the serv-
ice of man. One might as well endeavor to value one part
of any mechanical device by itself as to so value the fran-
chise of a public service corporation by itself, or so value its
land, or likewise its movables. To do so leaves out of view
the great and often chief element of value which is produced
by the combination. So in order to deal justly in the dis-
tribution of public burdens, the entire property in use and
for use in the exercise of the public franchise, for the pur-
poses of taxation, should be regarded as realty, the franchise
and movables being viewed as appurtenant to the lands, or the
intangible element regarded as personalty, and the physical
elements, consisting of lands and movables, be regarded as ap-
purtenant thereto and partaking of its character. The latter
seemed upon due consideration by this court in *State ex rel.
Milwaukee St. R. Co. v. Anderson, supra,* to be the most
consistent with, and really demanded by, the constitutional
method of imposing public burdens in the form of taxation,
as regulated by the legislation of this state. That was clearly
declared and established in such case, so far as the court
could do so. It was said, in effect, that the system in vogue
here contemplates that everything of value constituting a sub-
ject of private ownership and wealth, whether tangible or in-
tangible, which the legislature shall select for the purpose,
may be included in the aggregate of property to bear the
public burdens of taxation, and in the manner best calculated
to take account of values produced by the combination of
franchises and other things of value; which can only be at-
tained, as regards the former, which in their very nature are
inseparable from the latter without destruction, so to speak,
of the body in which inheres the great value, by appraising
them as integral parts of the combination, to be viewed in
its entirety only, every element being impressed with the

character of the one from which springs the public duty and the necessity for inseparable union with it of tangible things consisting of lands and movables, in order to perform it.

What has been said would be sufficient to show that the effect of finding that the property of respondent, upon which the taxes in question were assessed, belonged to it at the time of the assessment, and consisted of its waterworks, franchise, plant, mains, hydrants, real estate, and other property used in the operation of such works, was to decide that it owned at such time personal property liable to taxation, fully satisfying the first statutory essential to the right of appellant to recover. But the character of the property, as to whether personalty or realty, does not necessarily rest on judicial policy or construction, since in the revision of the statutes of 1898 the principles laid down by the court as indicated, were embodied in a legislative enactment, sec. 1037a of such statutes, as regards water and lighting companies.

The finding that respondent owned the waterworks property at the time of the assessment and continuously thereafter down to the time of the trial, in effect found the second statutory requisite to the right of appellant to recover judgment, if personalty, consisting of inseparable parts of a waterworks property, satisfies the call of the statute for "property, real or personal, of any description, sufficient to pay such tax or any part thereof." Counsel for respondent say the question in that regard was not answered by the court at all. Whether counsel mean that it was not formally answered, or not answered because the fact that appellant possessed the waterworks property was not a finding that it owned real or personal property sufficient to pay the tax or any part thereof because there is no finding on the subject of value, or whether they mean that there is no finding that appellant possessed property sufficient to pay the tax or any part thereof because the plant, neither in its entirety nor in its parts, could be taken upon execution, we are left en-

tirely in the dark. True, the learned trial court did not follow the statute. Why the statutory questions were not made a part of its findings, and answered, as they clearly should have been, instead of general findings being made, leaving it to be determined by inference whether the statutory essentials were in fact found or not, we cannot perceive. However, the duty devolves upon us not to allow justice to miscarry if it can be prevented by disregarding errors and defects, however palpable, numerous or inexcusable they may be, which do not affect substantial rights. Sec. 2829, Stats. 1898; *Mauch v. Hartford,* 112 Wis. 40, 62, 87 N. W. 816.

Now there can be no manner of doubt that the finding that respondent owned the property taxed at the time of the trial, in effect decided that it then possessed property, real or personal, sufficient to pay the tax or some part thereof, unless, in order to satisfy the statutory call in that regard, the property must be of a character subject to actual seizure upon execution. The statute does not seem to say that, either in terms or by reasonable inference. The mere fact that the property of a public service corporation like the respondent, cannot be interfered with by a seizure under execution or tax warrant, as held in *Chicago & N. W. R. Co. v. Forest Co.* 95 Wis. 80, 70 N. W. 77, by no means militates against the right to recover judgment against it in the process of enforcing its legal liabilities. That is done necessarily and universally. Though such a judgment cannot be so enforced as to prevent the performance of the public duties incident to the possession of the public franchise, judicial machinery is ample for its enforcement; and just as ample, of course, in a case of this kind as any other. It is considered that ownership of the property taxed by respondent at the time of the trial, is inconsistent with any other reasonable inference than that it then possessed property sufficient to pay the tax or some part thereof, satisfying the essentials of the statute.

Counsel say that the question as regards whether respondent was justly liable for the tax or any part thereof—the third statutory question—was answered in its favor; and suggest that though such answer is a mere conclusion from the findings preceding it, the statute is thereby satisfied, entitling respondent to the judgment complained of. We are unable to see why an obviously wrong finding can be relied upon by respondent, when properly challenged by appellant, to sustain a judgment in a case like this, any more than in any other. As we have seen, the court should l ave decided, in answer to the third statutory question, that respondent was justly liable for the tax. That is the necessary conclusion from the verities in the findings. The error must be corrected accordingly. The correction being made, all the statutory essentials to entitle appellant to a judgment will clearly appear.

The judgment appealed from must be reversed, the decision that respondent was not bound to pay the tax in question changed to one that respondent was and is justly liable for such payment, and the cause be remanded to the trial court with directions to render judgment in favor of appellant and against respondent for the amount of such tax, $2,294, with costs.

*By the Court.*—So ordered.

A motion by appellant to modify the judgment so as to provide for the payment of interest and a two per cent. collector's fee in addition to the sum of $2,294, tax and costs, was denied April 19, 1904.