MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, Appellant, vs. DOUGLAS COUNTY and another, Respondents.

*December 11, 1914—January 12, 1915.*

*Railroads: Taxation: Terminal facilities: Ore and merchandise docks: Property "necessarily" used is an entirety: Constitutional law: Uniformity in rule of taxation: Statute construed.*

1. The property of a public-service corporation like a railway company, including its franchises, terminals, and real and personal property, reasonably necessary to be used and in fact used in the performance of its duties to the public, is an entirety and is not to be separated for the purpose of taxation.

2. Terminal facilities, such as freight houses, grain elevators, and warehouses, owned by the carrier and equipped with the proper appliances necessary to enable it to perform its full duty of transportation and delivery of freight of all kinds, either to the consumer, the dealer, or a connecting carrier, constitute property "necessarily used in operating the railroad," within the meaning of sub. 3, sec. 1212, Stats. 1911, and are part of the entirety. The word "necessary," in this connection, means reasonably required in the exercise of sound business prudence.

3. An ore dock and a merchandise dock owned and operated by a railway company exclusively for its own use in temporarily storing, handling, and delivering to lake carriers the ore and freight hauled by it over its lines, and in receiving from lake carriers, temporarily storing, and loading merchandise and freight destined for transportation over its railway lines, are necessarily used in operating the railroad and are terminal facilities, within the foregoing rule.

4. The constitutional command that the rule of taxation shall be uniform (Const. art. VIII, sec. 1) is violated if a part of the property of a railway company, reasonably necessary to be used and in fact used in the operation of the railroad, be separated from the balance of the property and subjected to local taxation at a higher rate than that to which the balance of the property is subjected under the *ad valorem* law.

5. The exception in sub. 3 of sec. 1212, Stats. 1911, viz. "grain elevators used in transferring grain between cars and vessels, coal docks, ore docks and merchandise docks," includes only those elevators and docks which are not a part of the railway property because not necessarily used by the railroad in the performance of its duties as a common carrier.

APPEAL from a judgment of the circuit court for Douglas county: FRANK A. ROSS, Circuit Judge. *Reversed.*

Action in equity to set aside taxes levied by the city of Superior in 1912 upon the ore and merchandise docks and the lands on which they are located, owned and operated by the appellant in that city.

The facts in brief are these: The appellant company owns and operates between three and four thousand miles of railroad, extending from Superior to the grain fields of Minnesota and the Dakotas, as well as the iron ranges of Minnesota and the mining regions of Northeastern Wisconsin and Michigan. In August, 1910, it obtained from the Wisconsin railroad commission a certificate of convenience and necessity, authorizing it to build its ore railroad, commencing at its then main track and extending northerly through the city of Superior to the harbor line on the southerly side of St. Louis Bay. It built this ore railroad, including the elevated structure known as the approach to the dock, and the dock itself extending into the St. Louis Bay or river to the government dock line, and this dock is the dock mentioned in the complaint, and situated upon the lands there described. The dock is 1,800 feet in length, about eighty feet in height, and has 300 pockets which hold approximately 300 tons each. The railroad tracks are laid on top and the full length of the

dock, and it has always been owned and operated by the appellant exclusively for its own use in temporary storing and delivering of ore by it to boats, which in turn carried the ore to Eastern markets. At the time the appellant built this dock there were no other facilities at Superior which it could use for the purpose of storing, handling, or loading into lake carriers the ore which it transported. When the appellant built its railroad into Superior there were two merchandise docks there, one operated by the Great Northern Railway Company, which was insufficient in capacity to handle the business of that company, and the other operated by the Omaha Railway Company, located on Allouez Bay, several miles from any point on the appellant's road. Private capital has never furnished any docks or other terminal facilities at Superior for the transfer from rail to lake or lake to rail of either ore or merchandise. The appellant constructed a merchandise dock at Superior at the north end of Connor's Point, near the Interstate bridge, it being 1,000 feet long, eighty feet wide, with a water slip on one side, and four railroad tracks, for the service of the dock, immediately adjoining the other side, and it continued to own and operate this merchandise dock and tracks laid thereto for the purpose of temporary storage of freight hauled by it over its railroad, and loaded from the dock to vessels on the water side, and in receiving from the vessels freight coming in by water and destined to points upon the appellant's railroad.

No other use is made of the appellant's ore and merchandise docks except to receive ore and freight coming into Superior over appellant's lines and temporarily store and deliver the same to lake carriers, and to receive from lake carriers merchandise and freight destined for transportation over the appellant's railway lines, and temporarily store and load the same on cars for such transportation. The ore dock is elevated about eighty feet above the water and is furnished

with large pockets, the ore being dumped into the pockets, where it remains until a lake carrier is ready to receive it, when it is loaded into the carrier by gravity.

By ch. 540 of the Laws of 1911, sub. 3 of sec. 1212, Stats. (now sub. (7) of sec. 51.02, ch. 51, Stats. 1913), being the *ad valorem* railway taxation act, was amended so as to read as follows:

"3. The term 'property of the railroad company,' as used in this act, shall include all franchises, right of way, roadbed, tracks, stations, terminals, rolling stock, equipment and all other real and personal property of such company, used or employed in the operation of the railroad or in conducting its business, and shall include all title and interest in such property as owner, lessee or otherwise. Real estate not adjoining its tracks, stations or terminals; grain elevators used in transferring grain between cars and vessels, coal docks, ore docks and merchandise docks and real estate not necessarily used in operating the railroad are excepted, and shall be subject to taxation like the property of individuals."

Claiming to act under this section, the city officers of the city of Superior listed the appellant's said ore dock and merchandise dock, including the lands on which they stand, for taxation, placed the same upon the assessment roll, and levied taxes thereon like other real estate in the city in the year 1912. The taxes not being paid, the lands were returned as delinquent and will be sold at tax sale unless such sale be restrained. The rate of taxation applied to the plaintiff's railroad by the tax commission for the year 1912 under the *ad valorem* railway taxation act was .01108 plus, the rate of taxation on property in the city of Superior for that year was .02678, and the said docks were taxed at that rate.

The circuit court concluded that the docks were essentially wharf property, and might be assessed and taxed separately from the railroad itself, and dismissed the complaint. From this judgment the plaintiff appeals.

For the appellant there was a brief by *Luse, Powell & Luse,* attorneys, and *A. H. Bright* and *J. A. Murphy,* of counsel, and oral argument by *Mr. L. K. Luse* and *Mr. Murphy.*

*Arch'd McKay* and *H. V. Gard,* for the respondents.

There was also a brief and oral argument by *C. H. Van Alstine, amicus curiæ.*

WINSLOW, C. J.   The question in this case is whether the ore and merchandise docks can be separated from the balance of the plaintiff's property for purposes of taxation and subjected to a different tax rate.   The answer to this question must unquestionably be in the negative, and the propositions on which that answer is based are simple.

1. The property of a public-service corporation, like a railway, including its franchises, terminals, and real and personal property, reasonably necessary to be used and in fact used in the performance of its duties to the public, is an entirety and is not to be separated for the purpose of taxation. *State ex rel. Milwaukee St. R. Co. v. Anderson,* 90 Wis. 550, 63 N. W. 746; *Washburn v. Washburn W. W. Co.* 120 Wis. 575, 98 N. W. 539; *Chicago & N. W. R. Co. v. State,* 128 Wis. 553, 619, 108 N. W. 557.

2. Terminal facilities, such as freight houses, grain elevators, and warehouses, owned by the carrier, equipped with the proper appliances necessary to enable the railroad to perform its full duty of transportation and delivery of freight of all kinds, either to the consumer, the dealer, or a connecting carrier, constitute property necessarily used in the operation of a railroad, and hence become part of the entirety.   The word "necessary" here does not mean "inevitable" on the one hand, nor merely "convenient" or "profitable" on the other, but a stage of utility or materiality to the carrier's business less than the first but greater than the latter of these expressions. Perhaps the phrase "reasonably required in the exercise of sound business prudence" would express the idea fairly well.

*Chicago, St. P., M. & O. R. Co. v. Douglas Co.* 122 Wis. 273, 99 N. W. 1030; *Chicago, St. P., M. & O. R. Co. v. Bayfield Co.* 87 Wis. 188, 58 N. W. 245; *Superior Board of Trade v. G. N. R. Co.* 1 Wis. R. R. Comm. Rep. 619.

3. Both the ore dock and the merchandise dock in the present case come within the definition given in the last paragraph and are an integral part of the appellant's railway system. The fact that a considerable part of the ore-dock structure was made necessary in order to facilitate the transfer of the ore to lake carriers does not logically divest it of its character as a railway terminal. Necessarily it is a terminal facility of a specialized character, but just as truly a terminal facility.

4. The constitutional command that the rule of taxation shall be uniform is violated if a part of the property of a railroad company reasonably necessary to be used and in fact used in the operation of the railroad, like the docks in the present case, be separated from the balance of the property and subjected to local taxation at a higher rate than that to which the balance of the property is subjected under the *ad valorem* law. *Chicago & N. W. R. Co. v. State,* 128 Wis. 553, 108 N. W. 557.

5. The exception in sub. 3, sec. 1212, Stats. 1911 (now sub. (7) of sec. 51.02, ch. 51, Stats. 1913), viz. "grain elevators used in transferring grain between cars and vessels, coal docks, ore docks and merchandise docks," must be held to include only those elevators and docks which are not a part of the railway property, because not necessarily used by the railroad in the performance of its duties as a common carrier, as are the docks in question in the present case.

*By the Court.*—Judgment reversed, and action remanded with directions to render judgment for the plaintiff in accordance with the prayer of the complaint.